AMERICAN–HAWAIIAN S. S. CO. v. BENNETT & GOODALL et al. †

BENNETT & GOODALL v. AMERICAN–HAWAIIAN S. S. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. August 18, 1913.)

No. 2,230.

1. SHIPPING (§ 54*)—CHARTERS—LIMITATION OF LIABILITY OF CHARTERER.

Where a vessel is insured by the owner, a charter of the same, which is a demise of the vessel, may lawfully limit the liability of the charterer to such loss or injury as is not covered by the policies of insurance, even though the vessel is without motive power and must be towed.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. § 54.*

Liability for loss of or injuries to chartered vessel, see note to Salem Brick & Lumber Co. v. Donald & Taylor, 116 C. C. A. 508.]

2. INSURANCE (§ 403*)—CAUSE OF LOSS—MARINE INSURANCE—NEGLIGENCE OF OWNER, MASTER, OR CREW—"PERILS OF THE SEA."

A policy of insurance against perils of the sea covers a loss by stranding or collision although arising from the negligence of the insured or of the master or crew.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1091; Dec. Dig. § 403.*

For other definitions, see Words and Phrases, vol. 6, pp. 5295–5301.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 29, 1913.

3. INSURANCE (§ 403*)—CAUSE OF LOSS—MARINE INSURANCE—"PERIL OF THE SEA."

 The striking and stranding of a lighter while being towed in the usual manner in Napa creek, which is a tidal tributary of San Francisco Bay, was due to a peril of the sea within the terms of an insurance policy thereon.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1091; Dec. Dig. § 403.*

Appeal and Cross-Appeal from the District Court of the United States for the First Division of the Northern District of California; John J. De Haven, Judge.

Suit in admiralty by the American-Hawaiian Steamship Company against Bennett & Goodall, a corporation, respondent, and the Napa Gravel & Material Company and the American Bonding Company of Baltimore brought in by petition of respondent under admiralty rule 59. From the decree libelant and respondent appeal. Affirmed.

Louis T. Hengstler, of San Francisco, Cal., for American-Hawaiian S. S. Co.

Jesse W. Lilienthal and Albert Raymond, both of San Francisco, Cal., for American Bonding Co., of Baltimore.

Edwin T. Cooper, William Denman, and Denman & Arnold, all of San Francisco, Cal., for Bennett & Goodall.

Theodore A. Bell, of San Francisco, Cal., for Napa Gravel & Material Co.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. These appeals grow out of a libel filed in the court below by the American-Hawaiian Steamship Company against Bennett & Goodall to recover the value of a certain lighter belonging to the libelant and by it chartered, together with another one, to Bennett & Goodall, and which lighters were subsequently subchartered, with the consent of the libelant, to the Napa Gravel & Material Company, the performance of which contract with Bennett & Goodall was secured by a bond executed by the American Bonding Company of Baltimore. The subcharterer and its bonding company were made parties to the proceeding on petition of the respondent Bennett & Goodall, to the end that the entire controversy might be settled in the one action. One of the provisions of the subcharter was as follows:

"The entire barges are hereby let and surrendered to the said (Napa Gravel & Material Company) who shall have exclusive control thereof."

And another of its provisions made the subcharterer "fully responsible for and" liable "to pay on demand any and all damages and deterioration to said barges and to each and both of them not directly due to ordinary wear and tear or not included in and covered by the insurance policies now or hereafter in existence insuring said barges."

The bonding company bound itself in a certain stated sum of money for the faithful performance of all of the obligations of the subcharterer, "provided, however, that the surety shall not in any event be

liable for the payment of any damage or loss coverable by policies of insurance insuring said barges against damage or loss by accident or fire." As a matter of course, if, upon the record, the respondent corporation Bennett & Goodall is not liable for the loss of the vessel in question, the action will likewise be ended as respects the subcharterer and the bonding company. The charter to Bennett & Goodall consisted of a letter from the libelant, the terms and conditions of which were accepted by Bennett & Goodall, the pertinent portions of which are as follows:

"You [Bennett & Goodall] are to be responsible for these lighters and whatever gear is on them when you take them, and are to return them in as good order and condition as when you got them, reasonable wear and tear and happenings covered by their present policies of insurance excepted. You are particularly not to permit anything to be loaded on them or unloaded from them in a manner that will twist or strain them, and if they are lost through any cause that will permit our underwriters to make a successful defense against paying the face of the policies, you are to be responsible. We are to keep the lighters insured as they are now insured," etc.

Notwithstanding the foregoing express provisions of the charter party, the libel alleged it to be as follows:

"That on or about the 18th day of March, A. D. 1907, the libelant was the owner of the lighter called 'No. 1'; that on or about said 18th day of March, A. D. 1907, the libelant and respondent made an agreement in writing by the terms of which libelant chartered and hired said lighter 'No. 1' to respondent for a monthly rental then and there agreed upon; that among other things it was then and there agreed between libelant and respondent that respondent should be responsible to libelant for said lighter, and in particular for the loss thereof, and should return said lighter to libelant in as good order and condition as when received; and that in case respondent should lose or fail to return the said lighter the agreed value thereof to be paid by respondent to libelant should be the sum of $7,500."

It is plain that the contract as alleged in the libel is not the charter party actually made.

The record shows that the libelant had shortly before chartering the lighters insured them for their full value, the policy covering "adventures and perils * * * of the seas, * * * barratry of the master and mariners, and all other perils, losses, and misfortunes that have or shall come to the hurt, detriment, or damage to said vessel or any part thereof," which policy was in force at the time of the execution of the charter party in question. Turning to it, it is seen that the responsibility of Bennett & Goodall in respect to the care and return of the lighters is therein specifically stated in two places. In the first instance they are expressly required to return them in as good order and condition as they were in when they got them, "reasonable wear and tear and happenings covered by their present policies of insurance excepted"; this provision being supplemented by the subsequent express clause that, "if they are lost through any cause that will permit our underwriters to make a successful defense against paying the face of the policies, you are to be responsible," following which is the provision that "we are to keep the lighters insured as they are now insured." We agree with the court below that the clear meaning of this language is to exempt the respondent Bennett & Goodall cor-

poration from liability for any loss caused by a happening covered by the policy of insurance.

The trial court found in effect that that company took possession of the lighters under the terms and conditions of the charter party and performed all of its agreements with respect thereto up to the time of its rechartering them, with the consent of the libelant, to the Napa Gravel & Material Company, which latter company was operating the lighter here in question, at the time it was wrecked and lost, in the transportation of gravel down Napa creek, which the evidence shows without dispute is a tidal tributary of San Francisco Bay. The court further found that during the times in question the libelant had a policy of insurance issued to it by the Sea Insurance Company, Limited, of Liverpool, which policy did, during all of the said times, insure the libelant against all happenings to the said lighter by reason of perils of the sea and barratry, and that:

"The said lighter was lost through a cause that would not permit and did not permit the said Sea Insurance Company to make a successful defense against the payment of the said policy, the said cause being a happening to the said lighter, to wit, a peril of the sea, to wit, the wrecking of the said vessel by striking upon the bank of Napa creek whereby she was caused to collapse and be utterly destroyed; that said lighter was not lost by reason of any willful misconduct or neglect or willful act of any kind by the libelant or of any of the respondents."

[1] Having protected itself by insurance against certain losses, it cannot be doubted that the owner had the right to stipulate in the charter party that the charterer should not be liable for any loss caused by anything covered by the policy. There is nothing contrary to public policy or in any respect wrong in such a stipulation. Even a common carrier, who has obtained insurance against the loss of goods by means of the usual perils, though occasioned by his own negligence, "may lawfully stipulate with the owner to be allowed the benefit of insurance voluntarily obtained by the latter." Phœnix Insurance Co. v. Erie Transportation Co., 117 U. S. 312, 325, 6 Sup. Ct. 1176, 29 L. Ed. 873.

The proctor for the libelant and appellant contends that the obligations imposed upon Bennett & Goodall by the charter party were substantially the same as those imposed by law upon a tug under a towage contract, and cites numerous authorities to the effect that a towing vessel cannot relieve itself by contract from liability for failure to exercise reasonable care and skill in the performance of the service and for the safety of the tow.

We are unable to see that the obligations resting upon Bennett & Goodall under the facts in this case are to be measured by those applicable to towage contracts. It is true that the lighter in question was without motive power and, if operated at all, had necessarily to be moved by independent means to be employed by the charterer or by such other party as might acquire the right to use it. In this instance that right passed, by the consent of the owner of the vessel, by subcharter to a third party, the Napa Gravel & Material Company, under express stipulation that it should "have exclusive control" of the lighter. The record shows that the gravel and material company took

such exclusive control of it and operated it in the tide waters of Napa creek by means of a gasoline launch and was so operating it when it struck one of the banks of the creek, resulting in its destruction.

[2] The trial judge found from the evidence, most of which was heard by him in open court, that it was not lost by reason of any willful misconduct or neglect or willful act of any kind by any one. The evidence shows without dispute that at the time of the accident the lighter was being operated in the usual way that such vessels are operated in the waters of Napa creek, to wit, by means of a gasoline launch at the time in charge of an employé of the Napa Gravel & Material Company, named Lattimore, and much of the oral testimony tends strongly to show that there was no negligence on either his part or that of his employer; but assuming that there was such negligence, and that Lattimore could be regarded as the employé of the Bennett & Goodall corporation, it was, we think, clearly a loss against which the owner was insured by the policy held by it.

"A policy of insurance against perils of the seas covers a loss by stranding or collision, although arising from the negligence of the master or the crew, because the assurer assumes to indemnify the assured against losses by particular perils, and the assured does not warrant that his servants will use due care to avoid them." Liverpool, etc., Co. v. Insurance Co., 129 U. S. 397, 428, 9 Sup. Ct. 469 (32 L. Ed. 788).

In 26 Cyc. 660, it is said:

"The general rule is that where the immediate cause of a loss is a peril of the sea insured against, the underwriters are liable notwithstanding such loss would not have occurred except for the negligence of the insured or that of the master, crew, or other agents or servants"—citing a large number of cases.

[3] That the unexpected striking and stranding of a vessel in tidal waters is a peril of the sea does not admit of question. Fletcher v. Inglis, 2 B. & Ald. 315; Letchford v. Oldham, 5 Q. B. D. 538.

The loss here involved being covered by the insurance and being expressly excepted from the obligations imposed upon Bennett & Goodall by the charter party, it results that the judgment must be and is affirmed.