## Case No. 486.

### ANTHONY v. AETNA INS. CO.

[1 Abb. (U. S.) 343;[1] 2 Chi. Leg. News, 34.]

Circuit Court, E. D. Michigan.    June Term, 1869.

INSURANCE — WHAT ARE "PERILS OF THE SEAS."

1. Under a policy of marine insurance against "perils of the lakes, seas, rivers, &c.;" also against "all other perils and misfortunes, &c.;" also against "the usual risk of lighterage at O." the assured shipped cattle to O. At that port, as the vessel was prevented by a bar from landing, the cattle were put on board a lighter to be landed. They were tied by ropes to a chain running through the lighter, fore and aft. This was the usual mode of landing cattle at that port. While the lighter was proceeding in, the cattle became frightened, broke a part of the chain loose, rushed overboard and were drowned. *Held*, 1. That this loss was within the insurance of "perils of the seas, &c."

2. That even if it were not covered by that provision, it was embraced within the general assurance against "other perils and misfortunes," and that against "the usual risk of lighterage at O."

At law. Motion for a new trial.

This action was brought by Francis W. Anthony against the Aetna Insurance Company, to recover upon a policy of insurance issued by the defendants upon live stock shipped on board a propeller plying upon Lake Superior. The facts out of which the controversy arose are detailed in the opinion of the court. Upon the former trial, which took place before judge Wilkins, the court directed the jury to render a verdict for the defendants, upon the ground that the loss which the plaintiff had sustained was not covered by the policy. The plaintiff now moved for a new trial, contending that this ruling was erroneous.

Moore & Griffin, for the motion.
Pond & Brown, opposed.

WITHEY, District Judge. On May 1, 1865, an open, season policy was issued by defendants to plaintiff, insuring the plaintiff's property from ports and places to ports and places, including the voyage in which was this risk. The adventure was to begin from the loading, and continue until the property should "arrive and be safely land-

---

[1][Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

ed at the port of destination." The risks covered by the policy are, "perils of the lakes, seas, rivers, canals, railroads, fires, jettisons, and all other perils and misfortunes that have or shall come to the hurt, detriment or damage of the said property, or any part thereof;" also, "the usual risk of lighterage at Ontonagon." Under this insurance the plaintiff shipped on board the propeller Pewabic, from Bayfield to Ontonagon, on Lake Superior, forty or more beef cattle. The vessel arrived off the latter port in July, 1865, but was prevented by a bar in the harbor from landing. The animals were taken from the propeller on to a lighter to be landed, and were fastened upon the lighter in this way: A chain of five-eighth inch iron—called an anchor chain—ran fore and aft through the middle of the lighter, fastened at the ends to timber heads eight or ten feet from each end of the lighter. To this chain the cattle were tied by ropes, heads in, on opposite sides of the chain. When the lighter had proceeded from a quarter to a third of the distance in, the cattle, from some cause not explained, became frightened, breaking the chain into three pieces, and twenty-seven of the cattle, tied to one of these pieces, went over into the lake and were drowned by the weight of the chain carrying their heads under water. The lighter was tugged in and out, and was in good condition. The cattle were fastened on the lighter in the customary way of lightering at that place. Such was the case made by the plaintiff at the trial, and the question presented, which we are called upon to decide, is whether the loss was occasioned by a "peril of the lakes," or "other peril or misfortune," within the meaning and intent of the policy.

The general doctrine is, that the insurer undertakes, in a marine risk, only to indemnify against extraordinary perils of the sea, and not against those ordinary ones to which every ship must inevitably be exposed. Every loss which arises from tempests, or by rocks, winds or waves, strictly and naturally comes under the idea of a loss occasioned by perils of the sea. But if this be the extent of the phrase, "perils of the sea," we should be obliged to conclude that it covered only accidents of an extraordinary nature, and produced only by natural causes peculiar to that element. Such, however, is clearly not the rule for construing the phrase, "perils of the sea," in reference to marine insurance. Mr. Parsons, in his work on Marine Insurance, (volume 1, p. 544,) says: "The phrase, 'perils of the seas' covers all losses or damage which arise from the extraordinary action of the wind and sea, and from inevitable accidents directly connected with navigation, excepting those provided for in other parts of the policy, as captures and the like." Mr. Justice Story, in the case of The Reeside, [Case No. 11,657,] remarks, that "the phrase 'danger of the

seas,' whether understood in its most limited sense, as importing only a loss by the natural accidents peculiar to that element; or whether understood in its more extended sense, as including inevitable accidents upon that element, must still, in either case, be clearly understood to include only such losses as are of an extraordinary nature, or arise from some irresistible force, or some overwhelming power, which cannot be guarded against by the ordinary exertions of human skill and prudence." The supreme court of the United States, in Garrison v. Memphis Ins. Co., 19 How. [60 U. S.] 312, 314, seems to give the more extended sense to the term, "perils of the sea," as suggested by Judge Story. That court says, these words "have been extended to comprehend losses arising from some irresistible force or overwhelming power, which no ordinary skill could anticipate or evade." It has often been said, and correctly, that what are ordinary and what are extraordinary perils, is a question of much difficulty. The difficulty has been illustrated by many cases: Thus, in Magnus v. Buttemer, 9 Eng. Law & Eq. 461, a vessel moored in a tide harbor, and took ground when the tide fell. In consequence of this she was hogged and strained all over. It was held the underwriters were not liable. In Potter v. Suffolk Ins. Co., [Case No. 11,339,] the circumstances were very similar to the last case, and Mr. Justice Story held, "that unless there was inherent weakness in the vessel, such damage could only be occasioned by an unusual and extraordinary accident in grounding, upon the ebbing of the tide, which would be a peril of the sea." In Hunter v. Potts, 4 Camp. 203, Lord Ellenborough held that a leak occasioned by rats was not a peril of the sea, not being a loss of an extraordinary nature. But in Garrigues v. Coxe, 1 Bin. 592, a leak occasioned by rats was held to be a peril within the policy. And Mr. Parsons, in his Marine Insurance, (volume 1, p. 546, note,) after citing a number of cases, concludes his review by saying: "On the authority of the recent cases in this country, we should consider the insurers liable in such a case, even if the rats remained on board through the negligence of the master, on the ground that the damage by water was the proximate cause of the loss." We might refer to many other cases on the subject, but we think they will not tend very much to elucidate the question involved in the case at bar; inasmuch as every case depends so much on its own particular facts and circumstances.

My own views are strongly in the direction of holding this case to be a loss within the term "perils of the sea," in accordance with the more comprehensive sense of those words and their more reasonable signification—in brief, because the cattle were drowned, which is peculiar to the element on which they were being transported; because they were drowned by an accident that could not have been guarded against by ordinary exertions or prudence, considering the fact that it was the usual mode of lightering at that place, which fact must be presumed to have been known to the insurer; because, too, it could not reasonably have been foreseen that there was inherent weakness in the chain; and because, in the absence of explanation by the insurer, it is to be presumed the fright of the animals was caused by something connected with navigation, whether from the exhaust of steam, the working of machinery of the tug, the ringing of a bell, or otherwise. It was a peril of navigation, which could not well have been foreseen or guarded against by the carrier. But we are not compelled to rest our decision on the ground strictly of a loss by a "peril of the sea," and the court does not wish to be understood as so deciding. I have simply indicated the tendency of my own mind after an examination of the question, because that particular point was much dwelt upon by the arguments of the learned counsel. We are entirely clear, after a careful examination of the authorities, that the loss was a risk within the general terms of the policy, "all other perils and misfortunes," and the specific provision, "the usual risk of lighterage at Ontonagon." While it is laid down by the authorities, that these general words, "all other perils," cover only perils of the like kind to those specifically enumerated, we think they are material and operative words, and are not in the policy to have no effect assigned to them in its construction. Hildyard on Marine Insurance, (page 348,) says, these words have "the effect of providing for any doubts which might arise as to cases which come nearly, but not precisely, under the specific causes of loss. In Cullen v. Butler, 5 Maule & S. 465, Lord Ellenborough says: 'They are entitled to be considered as material and operative words, and to have due effect assigned to them in the construction of this instrument; and which will be done by allowing them to comprehend and cover other cases of marine damage of the like kind with those which are specially enumerated and occasioned by similar causes.' "

The animals did not die from disease or any inherent defect in them, but from an accident on water, in course of the voyage, and was something peculiar to that element. Had the accident of breaking the fastening occurred in a land transportation, no such result could have taken place. The cattle were drowned by their heads being drawn under water by the weight of the piece of chain to which they were tied. It was five-eighths inch iron, and had the chain been perfect would undoubtedly have resisted any strain the whole number of the animals on board could have produced, and yet the accident was fortuitous. It was the custom to use this chain for fastening cattle light-

ered from vessels; it was believed to be sufficiently strong, and, as we have already remarked, it could not have been foreseen, in all reasonable probability, that there was inherent weakness in this anchor chain. The insurer must be presumed to have known the usual mode and appliances of lighterage at the place, and to have had it in contemplation when taking the risk.

If, now, we regard it doubtful whether the loss was strictly within the indemnity against "perils of the sea," still we think it should be regarded as caused by perils of like kind, and therefore covered by the general words of the policy. No case has been found where the facts were like those in the one at bar; but on principle, Devaux v. I'Anson, 7 Scott, 507, is regarded as sustaining the conclusions to which we have arrived. In that case, the effect of the general words of the policy, "all other perils and misfortunes," were very fully considered, and the cases which had been decided referred to. The declaration averred that the "ship was broken, damaged and destroyed, and rendered wholly incapable of pursuing the said voyage, by certain perils which the said assurers as aforesaid by the said policy did take upon themselves, to wit: by the accidental breaking and giving way of the tackle and supports whereby the said ship was supported, in being moved from a certain dock; in consequence of which breaking and giving way, the said ship struck violently against the sand and was bilged, broken, destroyed, damaged, and rendered incapable of pursuing the said voyage as aforesaid." The defendants traversed the allegation that the ship was "broken, damaged, and destroyed, and rendered incapable of pursuing the said voyage, by any perils which the said assurers, by said policy, did · take upon themselves." Lord Chief Justice Tindal said, "the point remaining to be considered is, whether the loss was occasioned by any of the perils insured against by the policy. It is to be observed that the words in the policy are very large; the policy not only enumerates 'perils of the sea,' but 'all other perils, losses, and misfortunes that had or should come to the hurt, detriment, or damage' of the subject matter of the insurance." After referring to several cases, the learned judge says, "the loss occasioned by the endeavor to get the vessel afloat from the dock in which she had just been repaired, was a loss within the policy." Here the supports broke and caused the damage, like the case at bar. Again, the other clause in the contract, "the usual risk of lighterage at Ontonagon," was clearly not necessary to indemnify the assured against "perils of the sea," nor perils of the like kind, for the risk begins with loading the freight, and continues until safely landed. Assuming, then, what is claimed by defendants, the accident which happened not to be a loss by "perils by the sea," nor "other perils and misfortunes," we should,

in order to give due effect to the clause, "usual risk of lighterage," in view of the other stipulations of the policy being held not to cover the loss, say that it is covered by the risk of lighterage. In the view we have taken of "all other perils and misfortunes," there is no occasion to inquire into the effect of the lighterage clause; but if we were to hold differently in reference to the other specific and general clauses of the policy, it would be difficult to see how the lighterage clause could be regarded as operative words in the ·contract, unless held to cover their loss. For the reasons given, the motion must prevail, and a new trial be awarded.

Order accordingly.

NOTE, [from original report.] This decision was reviewed by the London Law Times upon the erroneous view that the jury had found, upon the facts, that the case was not one within the terms of the policy; was not a loss by perils of the seas. In truth, Judge Wilkins, before whom the cause was tried, upon hearing the facts, which were stipulated in writing, directed the jury to render a verdict for the defendant.