## THE GULNARE, (TIMOTHY MORONEY, Intervenor.)

*(Circuit Court, E. D. Louisiana. June 6, 1890.)*

1. **MARINE INSURANCE—INSURABLE INTEREST—CHARTERER.**
   One in possession of a vessel under a written contract with the owners which provides that he shall man and run her for a commission, and hold her as security for his disbursements, has an insurable interest.

2. **SAME—SEAWORTHINESS.**
   A vessel made a voyage from New Orleans to Frenchman's Harbor, where there was no opportunity to make repairs, took on a load, started back, and almost immediately sprung a leak, and was lost, without encountering any sea peril. *Held*, that the evidence showed the vessel was not seaworthy.

3. **SAME—THE POLICY—SEA PERIL.**
   Encountering heavy seas is not a sea peril, within the meaning of a policy of marine insurance.

In Admiralty.

*E. B. Kruttschnitt*, for intervenor.
*Henry Denis*, for receiver.

BILLINGS, J. This is a suit on a marine policy of insurance upon the steam-ship Gulnare. The loss of the vessel is admitted, and the binding force of the policy, with two exceptions. It is claimed that the vessel insured was not seaworthy, and that Moroney had no insurable interest.

1. Had Moroney an insurable interest? The policy is "on account of whom it may concern. Loss, if any, payable to him as his interest may appear." Therefore he must have had an insurable interest to enable him to maintain this action. The vessel belonged, so far as the registered title showed, to Boyd Bros.; but the real owners came, and were represented by a Mr. Kerwan, of New York. In 1883 the plaintiff in this suit went into possession of her under a contract in writing with the owners, which was lost with the vessel. That contract provided that the plaintiff should keep possession of and run the vessel for a commission, and for his advances he should look for security to the vessel. The plaintiff had no proprietary interest. He had no admiralty lien, since his allowances were made under a contract with and for the owners. But he had a written contract, under which he was, for a commission, to possess and man and run the vessel, and was to hold her as security for his disbursements. I think his interest, with reference to capability to be insured, was that of a charterer under a charter-party. Has the charterer an insurable interest in the vessel? Prof. Parsons answers this question in the affirmative. 1 Pars. Mar. Ins. 165, and note. See, also, *Bell* v. *Insurance Co.*, 5 Rob. (La.) 423, 444, where the court say: "If the property is held as security, it gives an insurable interest." See, also, cases cited by Prof. Parsons in the note.

2. Was the vessel seaworthy? Applying the settled principles of law to the evidence, she was not. She started from New Orleans, made the voyage to Frenchman's Harbor, took on a load of fruit, started on a return voyage, and almost immediately sprung a leak, and was lost. The presumption is in favor of seaworthiness; "but if the vessel spring

a leak after sailing, without having met with any peril, this raises the presumption that she was unseaworthy when she sailed. This presumption may be rebutted by proof of actual seaworthiness at the time of sailing. When a vessel is shown to have met with a sea peril, if the insurer claims that the danger was owing to her being unseaworthy, and not to a sea peril, the burden is on him to show this." 1 Pars. Mar. Law, 267–271. I think, since there was no opportunity to make any repairs at Frenchman's Harbor, the voyage out and back, to and from Frenchman's Harbor, must be regarded as a continuous voyage without having been in port, which is the view the petitioner's counsel thinks should be taken. Thus the burden was upon the insurer or insured, as to seaworthiness, according to whether or not the Gulnare encountered a sea peril on her voyage out. The protest states that she "encountered heavy seas, and rolled heavily." This is not a peril which is insured against, but is only an ordinary peril which any strong vessel encounters everywhere. Therefore the presumption of unseaworthiness is raised, which is not overcome by any evidence.· The exceptions to the master's report are overruled, the report is confirmed, and there will be judgment rejecting the claim of petitioner.