STARBUCK et al. v. PHENIX INS. CO. OF BROOKLYN, N. Y.

(Supreme Court, Appellate Division, First Department. January 19, 1900.)

1. MARINE INSURANCE—SEAWORTHINESS—PRESUMPTION.

Though there was a presumption of unseaworthiness from the entry of water through the open porthole of a vessel shortly after sailing, and before encountering any storms, on evidence that the deadlights were of the best character, with backers to protect them, were fit for the vessel and the employment she was engaged in, were in good order at time of sailing, and were closed and securely fastened, the question of seaworthiness was properly submitted to the jury.

2. SAME.

Whether a vessel was unseaworthy because water which entered a certain quarter could not be reached by her pumps, when there was evidence that the vessel was well fitted with pumps adapted to all ordinary conditions, was for the jury.

Appeal from trial term, New York county.

Action by Matilda E. Starbuck and others, as executors of William H. Starbuck, deceased, against the Phenix Insurance Company of Brooklyn, N. Y. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

For former hearings, see 55 N. Y. Supp. 1149; 54 N. Y. Supp. 293; 45 N. Y. Supp. 995; 41 N. Y. Supp. 901.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Robert D. Benedict, for appellant.
George H. Adams, for respondents.

BARRETT, J. This case has been tried four times, and has been before us three times. 10 App. Div. 198, 41 N. Y. Supp. 901; 19 App. Div. 139, 45 N. Y. Supp. 995; 34 App. Div. 293, 54 N. Y. Supp. 293. The facts disclosed upon the fourth trial now under review are substantially the same as they were upon the three former trials, and they are sufficiently stated in the reports of the previous appeals. The additional evidence adduced upon the last trial does not materially affect the questions of law now presented. The practical question upon the present appeal is whether the insured vessel was seaworthy at the inception of the voyage. She certainly was seaworthy when the policy was issued. If she was also seaworthy when the voyage commenced, there can be no doubt that the loss

was occasioned by "perils of the sea," within the intent and mean-
ing of that expression as used in the policy and as defined in the
books. The opening of the port or deadlight, and the entry of the
water which followed, was certainly not comprehended in the ordi-
nary wear and tear of the voyage; and if the vessel, notwithstand
ing the open port, was seaworthy when she sailed, the entry of the
water necessarily resulted from the action of the wind and waves,
and consequently from perils of the sea, as applicable to the inci-
dental conditions. Was the vessel, then, seaworthy when she sailed?
The defendant claims that she was not, because the deadlight failed
to resist the ordinary force of the sea. And it insists upon the ap-
plication of the rule laid down in the last appeal—following Wright
v. Insurance Co., 6 Bosw. 269, and Van Wickle v. Insurance Co., 97
N. Y. 354—that there was a presumption of unseaworthiness result-
ing from the entry of water through the open port shortly after
sailing, and without the vessel's encountering any storm. The de-
fendant, under the charge of the court, was given the full benefit of
this presumption. The plaintiffs, however, gave evidence tending
to rebut the presumption, and the question whether they succeeded in
doing so was properly left to the jury. The testimony which they
adduced tended to show that the vessel's portholes, or deadlights,
were of the best character, had backers to protect them, were fit
and appropriate for the vessel and the employment in which she
was engaged, were in good order when the vessel sailed, and were
then closed and securely fastened. This was sufficient to require
the submission to the jury of the question of seaworthiness. If they
believed this testimony, the presumption of unseaworthiness at the
inception of the voyage was rebutted, and they were then justified in
drawing other inferences as to the cause of the open port. The
real question was, should they credit the testimony that the port,
or deadlight, was suitable, and was in good condition at the in-
ception of the voyage, and securely fastened, in view of the fact that
it was found open so soon after sailing, and under the ordinary
weather conditions. We cannot, therefore, agree with the appel-
lant that the facts proved without dispute that the ship was un-
seaworthy, and that it was entitled to a direction of a verdict in
its favor. It is true that the plaintiffs might also have shown the
condition of the deadlight after the vessel was raised, and the fail-
ure to do so may have been a suspicious circumstance. But that
consideration was put before the jury by the learned trial justice,
and they were required to give due weight to the failure to produce
explanatory evidence which it was in the plaintiffs' power to fur-
nish. Upon the other hand, there were circumstances from which
it might fairly have been inferred that the port was not open, at
least for some hours after the commencement of the voyage. The
ship sailed about 2 o'clock on the afternoon of the 29th of April,
1888. The side of the vessel where the deadlight in question was
situated was for several hours thereafter exposed to the beating
of the wind and sea, and yet the entry of water does not seem to
have been discovered until after 2 o'clock in the morning of the
next day, the 30th of April. It is impossible upon these facts to ex-

clude all other inferences save that invoked by the appellant. If the jury believed the plaintiffs' testimony as to the condition of the deadlight when the ship sailed, it was not mere conjecture, but reasonable inference, that the deadlight was opened by some human agency from within, or by some unknown force from without. The former inference is not conclusively rebutted by the application of the rule laid down by the learned trial justice, in charging one of the propositions submitted by the defendant, to the effect that the opening of the deadlight would have been a criminal offense, and that the commission of a crime should not be presumed. What the learned justice undoubtedly meant to convey was that the opening of the deadlight with evil intent would have been a crime. He did not charge that its mere negligent or careless opening could not be inferred. This is apparent from what he said to the jury in his colloquial charge. After speaking of the rule as to seaworthiness at the inception of the voyage, he told them that, if the owner had secured a competent master and crew, neither they nor the plaintiffs, who represent them, "could be charged with a failure of duty, even if the vessel became unseaworthy (during the voyage) through some act or neglect on the part of the vessel or crew." And again, speaking of unseaworthiness, he said: "If the port, or deadlight, became open of itself because unable to stand ordinary wear and tear, then the loss could not be traced to a peril of the seas; but if the deadlight, although sufficiently secure, became open by accident, and the loss arose from a cause not reasonably to be anticipated or guarded against by the owners, it is for you to say whether this was not damage done by a peril of the seas within the definition which I have stated." The jury were thus permitted—we think, properly—to consider whether or not it was a fair inference that some one in the vessel opened the deadlight without criminal intent, though with mistaken judgment. The human agency was present; the port was open; the means of opening it were within reach; and the exclusion of the opposite inference followed the jury's belief in the plaintiff's evidence as to the condition of the port when the vessel sailed. It is thus impossible, as matter of law, to entirely exclude such an inference. Upon the whole, we see no reason for disturbing the verdict. The case was tried in accordance with the rules laid down by this court upon the previous appeals, and with a clear appreciation of the views which we then expressed.

There is another branch of the case to which the latter observations are equally applicable. We refer to the claim of unseaworthiness because the water, which got into the starboard alleyway of the vessel through the port, could not be brought under the effective operation of the pumps, for the reason that the latter did not reach this particular locality. The evidence sufficiently established that the vessel was well fitted with pumps, adapted to all ordinary conditions, or to such as could reasonably be anticipated; and, if they were inadequate to relieve the vessel upon the occasion and under the circumstances in question, it was because the occasion and the circumstances were extraordinary, and such as could not reasonably have been anticipated. At least, it was competent for the jury to

so decide. The question on that head was also one of fact, and it was properly submitted to the jury.

The exceptions to the charge and to the refusals to charge need not be specially considered. They are based largely upon the position which the defendant took with regard to the effect of the evidence, and they were adapted to the clear elucidation of that position. If the learned justice was wrong in not dismissing the complaint, his error is emphasized by his treatment of these requests. If, however, he was right,—as we think he was,—his charge was correct, and his treatment of the requests unobjectionable.

We have gone over all the points made by the appellant, and we find no error which would warrant another reversal of the judgment in this protracted litigation. It follows, from our view of the inferences properly deducible from the facts, that the comments thereon made by the plaintiffs' counsel in his summing up to the jury were entirely admissible and proper. Indeed, the only doubtful rulings which we have been able to discover upon this or any other question in the case are rulings to the prejudices of the plaintiffs.

The judgment and order denying the defendant's motion for a new trial should be affirmed, with costs. All concur.