[No. 18251. Department One. December 4, 1923.]

# H. M. Delanty et al., Respondents, v. Yang Tsze Insurance Association, Limited, Appellant.[1]

Insurance (24-27)—Marine Insurance—Insurable Interest—Invalid Lease—Title and Possession of Property. Regardless of the validity of a lease under which it obtained possession, a dredging company, in possession of a tugboat and liable for its preservation or value to whomsoever had the legal title, has such an insurable interest therein as to entitle it to take out a policy of marine insurance and to recover thereon for the loss of the boat at sea.

Same (71)—Avoidance of Policy—Concealment by Insured—Marine Insurance—Special Inquiry—Warranty by Insured. A policy of marine insurance covering a particular voyage of a tugboat is not avoided by failure to disclose that the boat had been aground a short time before starting on the trip, where no special inquiry was made as to such fact; in view of the insured's implied warranty of seaworthiness, and of subdiv. d, par. 3, of § 18, of the English Marine Act of 1906, which provides that, in the absence of inquiry no disclosure need be made of any circumstance which it is superfluous to disclose by reason of express or implied warranty.

Same (73)—Warranty—Seaworthiness of Boat—Breach—Evidence—Question for Jury. The fact that a tugboat, a few hours after starting on her voyage, sprung a leak and sank, without any known cause, does not raise a presumption that she was unseaworthy when she started; but the question is for the jury, where the evidence suggested that several possible causes might have arisen after the start, the boat was thoroughly surveyed by the board of marine underwriters shortly after the writing of the policy and found to be in good condition, and was examined and her planking and seams found in good condition a few days before she started.

Same (117, 129)—Risks Insured Against—Marine Insurance—Perils of the Sea. Where a vessel is seaworthy on commencing a voyage, and sinks from a leak that developed during her voyage, her loss is due to "perils of the sea," within the provisions of a policy of marine insurance covering the same.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered March 27, 1923, upon the verdict of a jury rendered in favor of

[1] Reported in 220 Pac. 754.

the plaintiffs, in an action on a policy of marine insurance. Affirmed.

*William H. Gorham,* for appellant.

*Theodore B. Bruener* and *Grosscup & Morrow,* for respondent.

PARKER, J.—This is an action by the plaintiffs, Delanty and others, upon a contract of marine insurance whereby the defendant insurance association insured the tugboat "Bear" "for account of concerned"; that is, for the account and benefit of Tacoma Dredging Company, it having then the use and possession of the boat under a lease contract with the plaintiffs as owners thereof. A trial upon the merits in the superior court for Grays Harbor county, sitting with a jury, resulted in verdict and judgment in favor of the plaintiffs for the full amount of the policy, from which the defendant has appealed to this court.

Counsel upon both sides proceed in their argument upon the theory that this action was commenced and prosecuted by the plaintiffs as for the benefit of Tacoma Dredging Company, and that the plaintiffs stand in the shoes of that company and have the right to so prosecute the action as proper parties plaintiff. The boat was comparatively small as a tug, being a gas power boat of thirty-three gross tons. She was owned by the plaintiff and one Egerer, who died on December 20, 1920, as partners under the firm name of Bear Tugboat Company; the boat being the only partnership property and the operating or leasing of her being the only business of the firm.

On February 16, 1921, the plaintiffs, the surviving partners, leased the boat to Tacoma Dredging Company, looking to the taking of it from Grays Harbor to Tillamook Bay, in Oregon, there to be used by the

dredging company as a tugboat and tender in connection with the dredging company's plant there being operated. This lease contract was in writing, being signed in behalf of the partnership by one of the plaintiffs; manifestly such lease being authorized by all the surviving partners. No letters of administration were ever applied for by any of the surviving partners looking to the administration of Egerer's partnership interest in the boat. While J. H. Fuller had, on February 14, 1921, been duly appointed general administrator of the estate of Egerer and had duly qualified as such administrator, he never at any time assumed any control whatever over the partnership interest of Egerer in the boat, further than to inventory such interest as a one-twelfth interest therein, and to make sale thereof to the plaintiffs as surviving partners in pursuance of an order of the superior court made in the administration of Egerer's estate under § 1459, Rem. Comp. Stat. [P. C. § 9971], this sale, however, being consummated after the lease of the boat by the surviving partners to Tacoma Dredging Company and its loss.

The dredging company took the boat from Grays Harbor to Tillamook Bay, where it was used as contemplated for a period of some two months. Then the time having arrived for the return of the boat to Grays Harbor, and the dredging company being responsible for its safe return to Grays Harbor under the terms of the lease, the dredging company caused the insurance here in question to be effected, insuring the boat for the period of her return voyage from Tillamook Bay to Grays Harbor. On April 15, 1921, the boat commenced her return voyage to Grays Harbor, passing out of Tillamook Bay into the Pacific Ocean at 5:00 o'clock that evening. A few hours later she was dis-

covered to be leaking, which leaking developed to the extent that she sank in the Pacific Ocean off the mouth of the Columbia river and became a total loss at about 1:30 o'clock the following morning. Other facts will be noticed by us as may seem necessary in our discussion of the several contentions made by counsel.

It is first contended in behalf of appellant that the trial court erred in refusing to take the case from the jury and decide, as a matter of law, that there could be no recovery upon the policy as for the benefit of the dredging company, because that company had no insurable interest in the boat. The argument in support of this contention proceeds upon the theory that the dredging company had no insurable interest because its claim of such interest rested solely upon the lease contract between it and the surviving partners, which lease contract was void because of want of legal authority in the surviving partners to execute it after the death of the partner Egerer which, in legal effect, dissolved the partnership, rendering the partnership property subject to the sole management and control of the administrator of Egerer's estate. There is, of course, statutory authority supporting the general proposition that the surviving partners, in their individual capacity, did not have the right of management or control of the partnership property as against the administrator. We may concede for present purposes that, since there was, at the time of the making of the lease contract, an administrator of Egerer's estate having the right to administer the partnership property, such lease was void for want of power in the surviving partners, in their individual capacity, to make it. Whether anyone other than the administrator may question the validity of such lease, we need not now inquire. We are of the opinion, however, that the dredging company did have an insurable interest in the

boat by reason of the fact that it had possession of the boat and was at all events liable for the preservation or the value thereof to those whoever had legal right to it. Such possession gave rise to an implied promise on the part of the dredging company to restore the boat to its owner or owners, whoever they might be, though the lease contract be void for want of power in his surviving partners to execute it. Now an insurable interest in property does not have to be supported by a strict legal title therein, or even by strict legal right of possession therein. In 2 Joyce on Insurance (2d ed.), § 888, that learned author says:

"An insurable interest is *sui generis,* and peculiar in its texture and operation. It sometimes exists where there is not any present property, or *jus in re* or *jus ad rem.* It may cover inchoate rights, or rights in expectation, such as profits or commissions. Again, a person may be so circumstanced that it is important that a thing should have a continued existence; or he may be so related to, or concerned in the same, that he would almost positively derive a certain benefit or advantage therefrom but for its exposure to risks and damages, in which case he is interested in its safety or situation; or he might be liable or suffer some disadvantage or prejudice by its loss, damage, or destruction; or his relation to the property might be such in reference to the rights of others therein, that he is liable for its safety, care, and protection; . . ."

Suppose the lease contract was void in the sense that no one had any right whatever under it as such. It manifestly was not of such nature that the conditions resulting from its execution left all parties free from liability with reference to the property it purported to lease to the dredging company. True, as we are assuming for argument's sake, the statute renders such a contract void and unforceable as such, but the statute inflicts no penalty for the making of such a contract. Therefore, how can it be said that the

dredging company's possession of the boat was so morally wrong, in the light of public policy, as to deprive that company of the right to have the boat insured, to the end that the dredging company might be indemnified against loss which it would certainly suffer by way of damages it would have to pay to someone in case of the boat's loss while thus in the dredging company's hands. Referring to contracts rendered void by statute, other than those of a criminal or immoral nature, as being against public policy, Pollock in his Principles of Contract (9th ed.), 364, says:

"Where no penalty is imposed, and the intention of the legislature appears to be simply that the agreement is not to be enforced, there neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose."

Among the numerous decisions adhering to and illustrating this principle, we note the following: *Hill County v. Shaw & Borden Co.*, 225 Fed. 475; *Chapman v. County of Douglas*, 107 U. S. 348; *Pullman's Palace-Car Co. v. Central Transportation Co.*, 171 U. S. 138. In the last cited case, Mr. Justice Peckham, speaking for the court, said:

"The right to a recovery of the property transferred under an illegal contract is founded upon the implied promise to return or make compensation for it."

In the English Marine Insurance Act of 1906, which is but a codification of the law of marine insurance as developed by court decisions, with no attempt to prescribe new statutory rules (see Preface to Gow on Sea Insurance), we read:

"5.—(1) Subject to the provisions of this act, every person has an insurable interest who is interested in a marine adventure.

"(2) In particular a person is interested in a marine adventure where he stands in any legal or equitable re-

lation to the adventure or to any insurable property at risk therein, in consequence of which he may benefit by the safety or due arrival of insurable property, or may be prejudiced by its loss, or by damage thereto, or by the detention thereof, or may incur liability in respect thereof."

See, also, 1 Arnould on Marine Insurance (10th ed.), § 254, where the rule is noticed and commented upon in harmony with the views expressed in the above quoted and cited authorities. We conclude that Tacoma Dredging Company had an insurable interest in the boat, and that the policy cannot be avoided for want of such interest in that company.

Contention is made in behalf of appellant that the policy was rendered void by concealment on the part of the insured of the fact that the boat was aground a number of times while at Tillamook Bay preceding starting on her return voyage to Grays Harbor; which fact, it is asserted, had it been known to the agents of appellant, would have induced them to refrain from issuing the policy because of the possibility of such grounding rendering the boat unseaworthy. The following rule stated in the English Marine Insurance Act of 1906 is invoked in this behalf:

"18.—(1) Subject to the provisions of this section, the assured must disclose to the insurer, before the contract is concluded, every material circumstance which is known to the assured, and the assured is deemed to know every circumstance which, in the ordinary course of business, ought to be known by him. If the assured fails to make such disclosure, the insurer may avoid the contract.

"(2) Every circumstance is material which would influence the judgment of a prudent insurer in fixing the premium, or determining whether he will take the risk.

"(3) In the absence of inquiry the following circumstances need not be disclosed, namely: . . . .

"(b) Any circumstance which is known or presumed to be known to the insurer. The insurer is presumed to know matters of common notoriety or knowledge, and matters which an insurer in the ordinary course of his business, as such, ought to know; . . .

"(d) Any circumstance which it is superfluous to disclose by reason of any express or implied warranty.

"(4) Whether any particular circumstance, which is not disclosed, be material or not is, in each case, a question of fact."

Gow, Sea Insurance, p. XV.

Now the insured impliedly warrants to the insurer that the insured vessel is seaworthy at the commencement of the voyage; that is, when voyage insurance is involved, as it is here, the rule apparently being different when time insurance is involved. Therefore, it seems at once plain that to advise appellant of the grounding of the boat while at Tillamook Bay shortly before her return voyage was not necessary in the light of subd. d, par. 3, above quoted. The grounding of the boat a short time before the commencement of her return voyage manifestly had no bearing other than on the question of her seaworthiness, and that, as we have seen, was warranted by the insured. It is not claimed that any special inquiry touching such fact was made by the agents of appellant. The failure to disclose such fact to the insurer, in the absence of special inquiry, it seems well settled, does not avoid the policy. 1 Arnould on Marine Insurance (10th ed.), § 619; 3 Joyce on Insurance, § 1824.

It might well be argued, in the light of the evidence in this case, that the grounding of small tugs, such as this boat was, in their work about harbors and bays, such as Tillamook Bay and Grays Harbor, was a matter of such common notoriety that the insured was at all events absolved from the necessity of disclosing to appellant such commonly known occurrences to vessels

of this nature, size and common use, and that such particular circumstances may have well been found by the jury, as a question of fact, to have not been material. Indeed, this record very strongly indicates that the grounding of this boat a number of times on the soft bottom of the shallow waters of Tillamook Bay was not likely to result in any injury to the boat. We need not, however, pursue this inquiry further. We conclude that the failure on the part of the insured to disclose to appellant the fact of the grounding of the boat a number of times before the commencement of her return voyage did not warrant the court deciding, as a matter of law, that such fact avoided the policy.

Contention is made in behalf of appellant that the evidence introduced upon the trial calls for the conclusion, as a matter of law, that the boat was unseaworthy at the time of the commencement of her return voyage. The argument proceeds upon the theory that she developed the leak, foundered and sank within a few hours after starting upon her return voyage, without any apparent cause, and that therefore the burden of proving her seaworthiness at the time of her starting upon her return voyage rested upon the plaintiff seeking recovery upon the policy. Admitting, for the sake of argument, that there was such a complete want of proof of any cause for the sinking of the boat, occurring after the starting upon her return voyage, and thereby a presumption of her unseaworthiness when starting on her voyage arose, causing the burden of proof as to her seaworthiness to rest upon the plaintiffs, we are of the opinion that the evidence was such as to warrant the jury in finding that she was in fact seaworthy at that time, which the jury in effect did find, and thus rendered the verdict supportable upon the theory that the boat must have sprung a leak, sunk and become lost from a cause occurring after she

started upon her return voyage, though it may not be possible with any degree of certainty to determine what such cause was. The evidence, we think, suggests some possible causes, in that she might, after starting on her return voyage, have struck some object, such as a hidden snag or pile, or possible a spike in the latter, starting the opening of a seam in her planking, and this without being felt by any who were aboard. To our minds, this contention involves nothing but a question of fact as to the seaworthiness of the vessel when she started upon her return voyage. Now upon that question it appears that the boat was thoroughly surveyed by Captain Mack, representing the board of marine underwriters, on the 18th of February, 1921, just before the boat left Grays Harbor, a few days following the effecting of the insurance, in pursuance of a stipulation between the insurer and insured made at that time. She was found by Captain Mack to be in good seaworthy condition. It also appears, as the jury might have believed from the evidence, that she was practically out of the water, resting easy on soft ground but a few days before she started on her return voyage, at which time she was pretty thoroughly examined by those having her in charge and found to be in good condition, especially in so far as her planking and seams were concerned. There is some room for arguing that this examination might have been somewhat more thorough than was actually made, but we think, in the light of all the circumstances, it was for the jury to say whether or not the boat had become unseaworthy after it was found to be seaworthy by Captain Mack, who surveyed it some two months prior to that time at Grays Harbor. We think the trial court would not have been warranted in taking the case from the jury upon the question of the boat's seaworthiness at the time she started upon her return voyage.

Some contention is made that the proof did not warrant the jury finding that the boat was lost by any of the perils insured against. She was insured against "perils of the sea." When a vessel is seaworthy, as this one was found by the jury to be at the time of starting on her return voyage, and while upon her voyage sinks from a leak that develops during her voyage, as was the case here, it is quite beyond us to view her loss other than as a probable result of a peril of the sea, even though the cause of the development of the leak which ultimately results in her sinking cannot be ascertained. This was a question of fact touching which the jury were fully warranted in finding in favor of respondents. Some other contentions are made in behalf of appellant, but they seem to so plainly present questions of fact as not to call for serious consideration here.

We are of the opinion that the judgment of the trial court must be affirmed. It is so ordered.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.