## OLYMPIA CANNING CO. v. UNION MARINE INS. CO., Limited.

(District Court, W. D. Washington, N. D. April 14, 1925.)

No. 8439.

**I. Insurance ☞403—Loss of cargo due to improper loading held not caused by "perils of the seas."**

The sinking of a vessel in a calm sea, due to improper loading which caused her to capsize, *held* not caused by a "peril of the seas," within a policy on the cargo.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

**2. Insurance ☞416—Marine cargo policy held not to cover loss though negligent loading.**

A cargo policy, insuring against perils of the seas "and all other perils, losses, and misfortunes," *held* not to cover a loss due to improper loading of the vessel which caused her to capsize in a calm sea.

At Law. Action by the Olympia Canning Company against the Union Marine Insurance Company, Limited. On demurrer to affirmative defense. Overruled.

Plaintiff seeks to recover under a contract of marine insurance for goods shipped aboard the steamship Rubaiyat on a voyage from Olympia to Seattle, the material part providing:

"And touching the dangers and perils which the said company is contented to bear and does take upon itself in the voyage so insured as aforesaid, they are the sea, * * * and all other perils, losses, and misfortunes that have or shall come * * * to the * * * damage of the aforesaid subject-matter of this insurance or any part thereof."

All losses and customs are to be adjusted in accordance with the laws and customs of England.

The defendant admits the shipping of the cargo in harmony with the provisions of the policy; that the vessel was seaworthy when she sailed from the Port of Olympia; that during the course of the voyage, without any fault or neglect on the part of the plaintiff, the vessel sank, together with her cargo, and became a total loss; admits demand made for the loss by the plaintiff, refusal to pay, and as an affirmative defense states that the vessel sailed from the Port of Olympia bound for Seattle via Tacoma, having on board the cargo set out in the complaint; that at the Port of Tacoma additional cargo was taken which was improperly stowed, and the vessel, by reason thereof, became "top-heavy, unstable, tender, and unfitted" to

continue the voyage; that shortly after leaving the dock at Tacoma she capsized and sank and with her cargo became a total loss; that at the time the sea was calm, the weather fair, and the sinking was caused solely by her said top-heavy, unstable, tender, and unfit condition, and was not caused by perils of the seas or any other perils or risks covered by the contract of insurance mentioned.

The plaintiff has demurred to the affirmative defense.

Bogle, Bogle & Holman, of Seattle, Wash., for plaintiff.

Shorts & Denney, of Seattle, Wash., for defendant.

NETERER, District Judge (after stating the facts as above). [1] In the absence of adverse proof, it is presumed that the ship foundering at sea is because of the "peril of the sea." Rule 7, Sched. 1, Eng. Marine Act 1906; Delanty v. Yang Tsze Ins. Ass'n, 127 Wash. 238, 220 P. 754. Here the cause is known. The ship was seaworthy at the inception of the voyage. The issue is: Was the loss due to a peril of the sea? There is a distinction between "damages arising on the sea" and "perils arising directly from the sea." Merrill v. Arey, 17 Fed. Cas. 83. Judge Ware, in Merrill, supra, held that "dangers of the seas" included only those which accrued from the action of the elements and such as are incident to that cause, rather than to those arising on the seas. Circuit Judge Wallace, for the court, in The Warren Adams, 74 F. 413, 20 C. C. A. 486, said:

"All marine casualties resulting from the violent action of the elements, as distinguished from their natural, silent influence, upon the fabric of the vessel; casualties which may, and not consequences which must, occur."

Circuit Judge Rogers, for the court, in The Giulia, 218 F. 744, at page 746, 134 C. C. A. 422, 424, said:

"Perils of the seas are understood to mean those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irresistible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence."

Circuit Judge Hough, for the court, in The Rosalia (C. C. A.) 264 F. 285, at page 288, said:

" * * * Something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety."

Circuit Judge Gilbert, for the court, in Ætna Ins. Co. et al. v. Sacramento-Stockton S. S. Co. (C. C. A.) 273 F. 55, said at page 61:

"We reach the conclusion that by the English law and practice a peril of the sea need not be extraordinary, in the sense of being catastrophic or necessarily the result of uncommon causes, and that severe storms, rough seas, and even fogs may be comprised in the perils of the seas."

Circuit Justice Washington, in U. S. v. Hall, 26 Fed. Cas. 84, at 85, speaking of perils of the seas, said:

" * * * It may safely be laid down, that the accident, which is attributable to this cause, must happen without any fault or negligence of the master, and must occur at sea."

The King's Bench Division, February 19, 1924, 40 Times Law Reports, p. 347, in an action to recover on a policy of insurance on a submarine "covering all and every risk" to the vessel whilst being broken up, during which breaking up, as the result of negligence the vessel sank to the bottom, the court held:

" * * * That the unintentional admission of sea water into a ship whereby she was caused to sink was a peril of the sea, and therefore, even if the policy was to be read as an ordinary marine policy, so that the court must find something in the nature of a marine peril before the underwriters could be held liable, the plaintiffs were entitled to recover."

All matters in the affirmative defense well pleaded are admitted by the demurrer. Eliminating the conclusions from the issuable fact pleaded, it is admitted that there was nothing in the nature of a marine peril which caused the sinking. Ionides v. Universal Marine Ass'n, 9 R. C. 351 (Law Times Report, vol. 8, New Series, 705), is clearly distinguishable from the issue here, as is also P. Samuel & Co. v. Dumas, 26 Eng. Com. Cases 239 (93 Law Journal Rep. 415), King's Bench Division 1924, in which the court held scuttling a ship not a peril of the sea. The court also said in this case all storms are fortuitous, and "ordinary action of the waves is not." In Redman v. Wilson, 14 M. & W. 476, 153 Eng. Rep. 562, Exchequer Book 9, the vessel was unskillfully loaded and sprung a leak, but before stranding was in a tornado, and the court decreed recovery for the loss suffered after the tornado.

A fortuitous event is the happening of that which we cannot resist. Viterbo v. Friedlander, 120 U. S. 707, 7 S. Ct. 962, 30 L. Ed. 776. A happening independently of human will or means of foresight, resulting from unavoidable physical causes. Webster.

[2] If the vessel had sunk at the dock by reason of overloading, or improper loading with "gypsum in sax, plaster in sax and other cargo," it could not be seriously contended that the sinking was because of a peril of the sea. The C. R. Booth, 171 U. S. 450, 19 S. Ct. 9, 43 L. Ed. 234. The loading being of such a character that within "a few minutes" after leaving the dock she sunk in a calm sea, the weather being fair, by reason of the tender condition occasioned by the improper loading, the same result follows. The policy in issue is the ordinary marine policy, and "the court must find something in the nature of a marine peril" before recovery may be had. (40 Times Law Reports, supra), and from the admitted facts this cannot be done. The phrase "all other perils," etc., in the policy must refer to the "perils of the seas" and be held to have no effect, since there is no doubt as to the "specific causes of loss." Anthony v. Ætna Ins. Co., 1 Fed. Cas. 1046.

Demurrer is overruled.