16838

LAND v. FRANKLIN NAT. INS. CO. OF NEW YORK

(80 S. E. (2d) 420)

34

*Messrs. Thomas, Cain & Nettles,* of Columbia, *for Appellant,*

*Messrs. C. T. Graydon* and *John Grimball,* of Columbia, *for Respondent,*

March 1, 1954.

STUKES, Justice.

The plaintiff was the owner of a twenty-six-foot speed-boat on Lake Murray, powered by a 225-horse power inboard motor, which was in the use and possession of his son, J. N. Land, Jr. The facts of the controversy will be stated largely from the latter's testimony at the trial of this action and the references hereinafter to "Mr. Land" will be to him.

On September 1, 1950, after the boat had recently been repaired, the defendant, now appellant, issued its policy of marine insurance covering it for $1,500.00, for which annual premium of $75.00 was paid; it contained the following provisions:

"Section 'A'—Hull Insurance. In port and at sea, under power or sail, in docks and graving docks, and on ways, gridirons and pontoons. With leave to sail with or without pilots, to tow and assist vessels or craft in all situations, and to be towed and to go on trial trips.

"Perils * * * Touching the adventures and perils which we, the Assurers, are contented to bear, and do take upon us, they are of the seas, rivers, lakes and/or other inland waters, fire, assailing thieves, jettisons, barratry of the Master and Mariners, and of all other like perils, losses and

misfortunes, that have or shall come to the hurt, detriment or damage of said yacht or any part thereof.

"Latent Defect and Negligence * * * This insurance shall also cover, subject to the average warranty herein, loss of or damage to the hull or machinery, through the negligence of Master, Mariners, Engineers or Pilots, by contact with aircraft, or through explosions, bursting of boilers, breaking of shafts, or through any latent defect in the Machinery or Hull (excluding, however, the cost and expense of repairing or renewing the defective part), provided such loss or damage has not resulted from want of due diligence by the Owners of the yacht, or any of them, or by the Manager, or by the Assured."

Mr. Land was a member of a Coast Guard Auxiliary unit that maneuvered on the lake, for which purpose the boat was used, and also for pleasure. It was satisfactorily operated occasionally between September 1st and about September 24th when it was put through the usual Coast Guard maneuvers, after which it was briefly run at full throttle which produced a speed of over fifty miles per hour. When it was docked afterward, Mr. Land noticed that it was taking water and instead of leaving it at its usual mooring, he pulled it into shallow water, presumably as a precaution against sinking. That was on a Sunday afternoon and on the following Tuesday Mr. Land was notified that the boat had sunk, whereupon he had it raised and the motor removed to a repairman and the hull taken to another repair place.

He was experienced with motor boats over a period of twenty years and thereby qualified as an expert witness. He testified that the torque of the engine at full throttle caused the planking underneath the hull to open, the ribs giving under the strain of the engine at full throttle, which caused the leaking and sinking. This was emphasized on cross-examination by his statement that the torque of the engine was the only thing that could have caused the seams to open. He also testified that after the recent repairs and at the time of

the issuance of the policy and subsequently the boat was seaworthy. He was supported in this opinion by the testimony of another, disinterested expert witness who annually inspected the boat for seaworthiness for the Coast Guard; but his last inspection was several months before, and prior to a preceding sinking of the boat after which it was last repaired.

Appellant's answer in this action upon the policy alleged as a defense that the boat was not seaworthy when insured, which constituted a breach of implied warranty; and further alleged that the damage did not result from a "peril of the sea" or "latent defect" within the terms of the policy. At the close of plaintiff's evidence motion of appellant for nonsuit was refused, whereupon it offered no evidence and moved for directed verdict which was also refused. Appellant then voluntarily agreed that only questions of law were involved, and the jury were discharged and the case was taken under consideration by the court. However, there was at least the contested fact of seaworthiness and the finding of the trial court thereabout will be affirmed, of which further mention will be made.

Order of judgment for plaintiff was thereafter rendered in which it was held that the loss came within the broad terms of the policy but it was not specified whether liability arose from a peril of the sea or from a latent defect. Judgment was awarded respondent in the sum of $1,093, which was the sum of the damages to the hull and engine, as established by the evidence, and the expenses of raising and removal of the boat from the water.

Appellant's first and second exceptions are to the effect that the only reasonable inference from the evidence is that the sinking of the boat was the result of neither a peril of the sea nor a latent defect, within the purview of the policy. The third exception is that it can only be reasonably inferred from the evidence that the boat was not seaworthy. The fourth exception is, we think, too general for consideration. The fifth is that if the sinking was caused by a

latent defect, the cost of repairing the hull should be excluded from the amount of the judgment because it was the defective part.

The third exception, which relates to seaworthiness, is plainly without merit because the only pertinent testimony is that the boat was seaworthy at the time of the issuance of the policy. It had been recently repaired and had afterward successfully undergone numerous tests and trial runs. The boat was about twenty years old but was of double-planking construction and there was testimony that like boats, properly cared for, would last as long as seventy or eighty years. More important than our view of the evidence on this feature, and conclusive, is the consideration that the trial court expressly found that the boat was seaworthy when insured and afterward, and, supported by evidence, the finding is conclusive upon appeal in this, a law, case.

The evidence has been sufficiently reviewed to show that it conclusively negatived the existence of a latent defect which caused the loss. Some of the seams of the hull simply opened under the strain of the torque created by the heavy engine at full throttle. Therefore we think that the fifth exception is obviously untenable because the planking of a boat is not "latent," nor the opening of it under strain the result of a latent defect. For definition of the latter see 26 C. J. S., Defect, p. 670. The point is not disputed in appellant's brief so it need not be further belabored.

The case then resolves itself into whether the evidence justifies the conclusion that respondent's loss resulted from a peril of the sea, as that term was used in the policy. We think it does. Since the fact found is that the boat was seaworthy at the inception of the insurance, it was not essential to liability that the causative accident should have been determined from the evidence, as it was here. There have always been unsolved mysteries of the sea. The following is from Sec. 1449, Insurance, 29 Am. Jur.

1089: "The weight of authority should seem to support the proposition that in the absence of any circumstance aside from the mere sinking to show a loss from causes outside the terms of the policy, the insured need only show that the vessel was seaworthy at the inception of the risk to raise a presumption of loss by perils of the sea, or at least, an inference from which the jury may so conclude." Applicable also is this from 45 C. J. S., Insurance, § 854, p. 935: "Moreover, it is not necessary that there should be the action of the sea, wind, or waves, violent or otherwise, to cause a peril of the sea, but an accidental occurrence, peculiar to the sea, not happening through design, is sufficient." Decisions supporting the foregoing texts are *Massey Steamship Co. v. Importers & Exporters Ins. Co.,* 153 Minn. 88, 189 N. W. 415, 31 A. L. R. 1372, and numerous others which are reviewed in the appended annotation, 31 A. L. R. 1378.

Digests of the following other pertinent decisions are copied for convenience from pages 48, 51, of Volume 32 of Words and Phrases, "Perils of the sea," within a marine insurance policy insuring a vessel and cargo against the perils of the sea, include a loss caused by water entering a water-tight compartment of a vessel through an open deadlight. *Starbuck v. Phenix Ins. Co.,* 19 App. Div. 139, 45 N. Y. S. 995, 996. The term "perils of the sea", in a marine policy, includes a loss from the entry of water through an open port hole of a seaworthy vessel shortly after sailing, and before encountering any storms. *Starbuck v. Phenix Ins. Co.,* 47 App. Div. 621, 62 N. Y. S. 264, 265. Where a vessel is seaworthy at the time of her sailing, and afterwards suddenly springs a leak and founders, without any stress of weather or apparent cause, it is a loss by the perils of the sea. *Patrick v. Hallett,* N. Y., 1 Johns 241. Loss caused by entry of water through opening of seams of seaworthy vessel, or through other openings not made by design, is loss from "peril of the sea," within marine insurance policy. *James A. McAllister & Co. v. Western Assur. Co. of City*

*of Toronto,* 218 App. Div. 564, 218 N. Y. S. 658, 661. Where a tugboat which was seaworthy when the voyage began sank from a leak which developed during the voyage, a finding that the boat was lost through "perils of the sea" within the terms of the marine policy held warranted, even though the cause of the leak could not be ascertained. *Delanty v. Yang Tsze Ins. Ass'n,* 127 Wash. 238, 220 P. 754, 758.

A very recent decision of an eminent court is *Glens Falls Insurance Co. v. Long,* 1953, 195 Va. 117, 77 S. E. (2d) 457, 461. Judgment upon verdict against the insurer was affirmed upon a policy of similar terms as that before us. Seaworthy before, there was no explanation of the sudden leak and sinking of the pleasure motor boat. The court upheld and applied the rule, for which many authorities were cited, that proof of prior seaworthiness and subsequent sinking from leakage raises a presumption that the loss was occasioned by perils of the sea or latent defect, within the terms of the policy, and that such proof cast upon the insurer the obligation to rebut the presumption and failure to do so will sustain a finding in favor of the insured. The difference in that case and this is that here the cause of the sinking was proved and it was a peril of the sea, within the authorities which have been cited. The opinion of the Virginia court concluded with the following: "There was nothing whatever to indicate unseaworthiness unless it be the sudden and unexplained entry of water. The presumption that arose from the affirmative proof was not overcome solely by that fact; and defendant offered no evidence to rebut it. The proof sustains a finding that the boat foundered because of a peril of the sea or from a latent defect, both of which risks were assumed by the insurer."

Our own case of *Clinchfield Fuel Co. v. Aetna Insurance Co.,* 121 S. C. 305, 114 S. E. 543, 547, interesting and exhaustive opinion by Mr. Justice Cothran, is authority for affirmance of the judgment here. It involved a policy of insurance upon the cargo of a wooden vessel, not the vessel,

but the controlling principles are the same. There the insurer and insured stipulated in the policy that the boat was seaworthy; here that fact has been found by the trial court upon competent evidence, whereby this court is bound. The opinion in the *Clinchfield case* is replete with citations of authorities upon the definition of a peril of the sea and the following was said with respect to the contention that it is only something extraordinary: "The insurance is against 'perils of the sea,' not extraordinary perils, and to hold that the phrase includes only the results of occurrences which could not have been reasonably anticipated is to add a feature to the contract which the parties have not stipulated for. It is to infer that, when the insured paid his money for indemnity against loss by perils of the sea, be intended that the company should not be responsible if the loss occurred as a result of a storm, or the action of the wind and waves, which are well-known incidents of every voyage, the very things that he paid for protection against. We are reminded of the language of Judge O'Heall, who referred to a technical contention as employing a subtlety that baffles common sense." Incidentally, the case of The Gulnare, C. C., 1890, 42 F. 861, cited by appellant here, was criticized by the court and referred to as an illustration of the confusion in earlier cases on the subject. ·

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and TAYLOR and OXNER, JJ., and GRENEKER, Acting Associate Justice, concur.