FRANK QUIÑONES JIMÉNEZ, demandante y recurrido, *v.* GREAT AMERICAN INSURANCE COMPANY, demandada y recurrente.

Número: R-68-175      Resuelto: 3 de junio de 1969

*Rieckehoff, Calderón, Vargas & Arroyo y Antonio Montalvo Nazario*, abogados de la recurrente; *Rafael Martínez Álvarez, Jr., Rafael Martínez Álvarez, III*, y *José A. Fernández Paoli*, abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La recurrente Great American Insurance Company expidió una póliza, comúnmente conocida como de riesgos marítimos,[1] a favor del recurrido Frank Quiñones Jiménez en relación con una embarcación de éste para cubrir hasta la suma de dieciséis mil dólares los riesgos que se describieron en la siguiente forma:

"*Riesgos*. Con respecto a las contingencias y riesgos que esta Compañía acepta asumir, son los de los mares y aguas a que se ha hecho referencia, fuego, relampagueo, terremoto, piratería, vandalismo, daños maliciosos, echazón, hurto del yate, baratería del capitán y la tripulación, *y de todo otro riesgo similar*, pérdidas y desventuras, que causen lesión, perjuicio o daño a la referida embarcación o a parte de ella, con las excepciones especificadas en la póliza o mediante endoso.

*Defectos Latentes y Negligencia*. Este seguro cubre expresamente los daños causados por

Accidentes en la carga y descarga, toma de combustible, o en la travesía o lanzamiento, o mientras se encuentra en diques de carena, en despalmes, rejillas o pontones;

El colapso de edificios u otras estructuras . . . ;

La negligencia del capitán, la tripulación, ingenieros o pilotos;

.    .    .    .    .    .    .    .    .

Disponiéndose que las pérdidas o daños no hayan sido el resultado de la falta de debida diligencia de los Dueños de la embarcación o de su administrador."

---

[1] Para una interesante exposición del desarrollo de este tipo de seguro puede verse *A Symposium on the Hull Policy*, 41 Tul. L. Rev. 231 (1967).

La embarcación asegurada se hundió en la mañana del 24 de julio de 1965 en aguas del Océano Atlántico, a tres o cuatro millas de la costa de Dorado. Entablóse acción judicial en cobro de la póliza. En una conferencia preliminar al juicio las partes dejaron el pleito sometido con una estipulación de hechos sobre el título de la embarcación y la existencia del seguro, y además que "al momento de expedirse la póliza . . . el yate . . . estaba en condiciones de navegar (*seaworthy*)" y "las causas que dieron lugar al hundimiento se desconocen, pero sin embargo, en dicho hundimiento no medió culpa o negligencia de parte del demandante."

■ Redúcese la controversia a determinar si bajo los hechos estipulados puede, sin más, imponerse responsabilidad a la aseguradora recurrente, o si correspondía al asegurado establecer que el hundimiento se debió a uno de los riesgos enumerados en la póliza, sin que pueda descansar en el desconocimiento de la causa y en la presunción que surge de las condiciones de navegación (*seaworthiness*) [2] de la embarcación al momento de expedirse la póliza.

■ La norma más favorecida sostiene que, en ausencia de alguna circunstancia—aparte del mero hundimiento—que demuestre una pérdida por causas atribuibles a un suceso no cubierto por la póliza, el asegurado sólo viene obligado a demostrar que la embarcación estaba en condiciones de navegación al expedirse la póliza. Ello da lugar a que surja la presunción de que la pérdida se debió a un "riesgo del mar". En general, véanse, Anotación, *Necessity under marine insurance policy of showing specific cause of sinking of vessel*, 31 A.L.R. 1378; Couch, *Cyclopedia of Insurance Law* (2a.

---

[2] En términos generales se entiende por "condiciones de navegación" que la embarcación está razonablemente apta para enfrentarse a los peligros o riesgos que pueden anticiparse en el mar. *Compañía de Navegación v. Fireman's Fund Ins. Co.*, 277 U.S. 66, 75 (1928). Véase, *Marine Insurance Policies: The Implied Warranty of Seaworthiness*, 30 I.C.J. 89 (1963); 41 Harv. L. Rev. 537 (1928).

ed.), vol. 11, § 43:96; *Tropical Marine Prod.* v. *Birmingham Fire Ins. Co. of Pa.*, 247 F.2d 116 (5th Cir. 1957) ; *Brown* v. *Jerome*, 298 Fed. 1 (9th Cir. 1924) ; *Moores* v. *Louisville Underwriters*, 14 Fed. 226 (1882) ; *Mattson* v. *Connecticut Fire Ins. Co. of Hartford*, 80 F.Supp. 101 (1948) ; *Land* v. *Franklin Nat. Ins. Co. of New York*, 80 S.E.2d 420 (S.C. 1954) ; *Glens Falls Ins. Co.* v. *Long*, 77 S.E.2d 457 (Va. 1953) ; *Delanty* v. *Yang Tsze Ins. Ass'n.*, 220 Pac. 754 (Wash. 1923) ; *Massey S.S. Co.* v. *Importers' & Exporters' Ins. Co.*, 189 N.W. 415 (Minn. 1922) ; *Paddock-Hawley Iron Co.* v. *Providence-Washington Ins. Co.*, 93 S.W. 358 (Mo. 1906). Contra: *Boston Ins. Co.* v. *Dehydrating Process Co.*, 204 F.2d 441 (1st Cir. 1953) ; *The Jungshoved*, 290 F.2d (2d Cir. 1923) ; *Rousse* v. *Home Insurance Company*, 78 So.2d 522 (La. 1955) ; *Insurance Co.* v. *Tobin*, 32 Ohio St. 77 (1877). Una reciente modalidad de la regla se expone en *Commercial Union Assurance Company* v. *Foster*, 379 S.W.2d 320 (Texas 1964), en el cual se dice que es al asegurador a quien corresponde establecer afirmativamente la falta de capacidad para navegar.

*Pacific Dredging Company* v. *Hurley*, 397 P.2d 819 (Wash. 1964), en que descansa tesoneramente la aseguradora, no tiene el alcance que se le atribuye, y más bien sostiene la posición del asegurado. Al limitar el efecto de la presunción señalada se apunta que su aplicación tiene el propósito de descargar al reclamante del peso de la prueba sobre la causa del hundimiento "cuando la evidencia de ello es simplemente impracticable o imposible de producir." Pero cuando se establece que la causa de la pérdida es realmente desconocida la presunción se aplica en toda su extensión. Interpretada rectamente la opinión, a lo sumo lo que se requiere es que se demuestre que no hay prueba disponible o accesible sobre la causa del hundimiento. Contrario a lo que ocurría en la situación que allí se consideraba en que se conocía la identidad de testigos que podían arrojar luz sobre las causas del

hundimiento y no se produjeron, en el presente caso se estipuló expresamente que "las causas que dieron lugar al hundimiento se desconocen." Siendo desconocida la causa, aun bajo *Pacific*, procedía dar virtualidad a la presunción.

*Watson* v. *Providence Washington Ins. Co.*, 106 F.Supp. 244 (1952), introduce otro elemento, el inexplicado hundimiento de una embarcación *en buen tiempo*. Aun cuando aceptáramos la norma que se esboza que en esas condiciones descarta la suficiencia de la prueba sobre la existencia de condiciones de navegación, no podríamos aplicarla porque no se produjo prueba alguna sobre las circunstancias del tiempo. Véanse además, *Hazard's, Administrator* v. *The N.E. Marine Insurance Co.*, 8 L.Ed. 1043 (1834); *Jahn* v. *Steamship Folmina*, 212 U.S. 354 (1908); *Klein* v. *Globe & Rutgers Fire Ins. Co.*, 2 F.2d 137 (3d Cir. 1924); *Green* v. *Globe & Rutgers Fire Ins. Co.*, 192 N.Y.Supp. 770 (1922).

■ Adoptamos, por creerla más razonable, la posición mayoritaria. Así, cuando una embarcación en condiciones de navegar se hunde, *y no es posible determinar la causa*, debe presumirse que el naufragio se debió a algún riesgo del mar. El hecho de que después del hundimiento no pueda determinarse la causa específica no debe eximir de responsabilidad a la aseguradora cuando la embarcación estaba en buenas condiciones y no medió negligencia del asegurado. Las probabilidades son que en tales circunstancias haya intervenido algún riesgo del mar. No es más que un reconocimiento a la fuerza de los elementos y a la inconstancia y conmociones del mar, de un lado, y a la falibilidad de la máquina y la finitud de la pericia del hombre, de otro.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 15 de mayo de 1968.*