The opinion of the Court was delivered at this term by
Sewall, J.,
who, after stating the facts, proceeded thus: In arguing from this state of facts, the plaintiffs’ counsel were disposed to rely upon the circumstance of the abandonment. But upon a suggestion, from the Court, that it had not been made until the removal' of the embargo, and that the conduct of the assured afterwards, in receiving and disposing of the vessel upon her arrival, might be considered as a waiver of the abandonment, if they had had a right to make it, this circumstance was not insisted on; and the plaintiffs were understood to proceed as for a partial loss, stated to consist in the following items : —
1. The balance of the proceeds of the outward cargo, lost in the hands of the factor, Castine.
2. Certain damages which the vessel sustained in her hull, rigging, and appurtenances, from the worms and climate.
3. The extraordinary expenditure of provisions in supporting the sentinels and people put on board from the French fleet.
4. The loss of employment and of the earnings of the vessel, for the time of the embargo.
* It will not be disputed but that the loss of the [ * 427 ] money left in the hands of the plaintiffs’ factor was a damage to them which happened while the voyage insured was proceeding under the protection of the policy in this case. But the question to be decided is, whether that money, in the situation in which it was lost, was a subject of the policy ; or, in other words, was part of the cargo of the schooner Catherine, and lost by a peril undertaken by the defendants.
If the words in this instrument, descriptive of the subject-matter of the insurance, and of the duration of the risk, had been in the usual form of English policies, and instead of the term cargo, the description had been goods laden on board the said schooner, from the loading thereof aboard, and to continue until the same be discharged and safely landed, it would hardly be pretended that goods landed from the vessel, or goods prepared to be put on board, but lost by the burning of a dwelling-house or warehouse on the shore, were within the words of the policy. Accordingly, the general rule in the construction of English policies is, that the risk on goods continues no longer than they are actually on board the ship mentioned in the policy.
By the ordinances of France, and of some other countries, as cited by Marshall, (8) it is provided that, if the time of the risk be not regulated by the contract, it shall commence, as to goods, from *384 the time they are put on board the ship, or put into barges to be conveyed on board, that is, from the moment they leave the shore : and the reason assigned for this regulation is, because the perils ot the sea commence from the moment the goods are on the water.
In this contract the schooner Catherine and her cargo are insured, and the risk upon the goods or cargo, as to its commencement and duration, is not distinguished from the risk upon the vessel. By this description, the goods insured seem to be as closely connected with the vessel as her rigging or furniture: at least, their [ * 438 ] connection with the vessel is essential to ascertain * the goods insured; and any other construction would leave the contract altogether uncertain and indefinite as to the subject of it in this instance. The goods which constituted the outward cargo, when landed from the vessel, lost that character, and were no longer protected by the policy. The proceeds of those goods, whether existing in the credit of the factor, in money, or in other goods prepared for a return cargo, were equally without the protection of the policy. These are not within the description of goods insured as the cargo of the vessel; nor can they be understood to be within the intention of the parties; especially if we consider the nature of the perils undertaken by the insurers. These are altogether of the sea, or of a maritime nature, and do not include the credit of a factor, or the security of his dwelling-house or warehouse, or the many distinct perils to which goods upon the shore are liable. (a)
In the case of Tierney vs. Etherington, the specific gqods lost in the storeship at Gibraltar were the subject-matter of the insurance, and by the terms of the insurance were to be reshipped there under the protection of the policy; and in the event, and by the usage of the trade, the placing them in a storeship was a necessary and proper method of unloading and reshipping.
In the case of Pelly vs. The Royal Exchange Insurance Company, the rigging burnt in the bank saul had been placed there by necessity, and for the repair of the ship ; and the transaction was according to the course of the voyage insured; and the policy expressly extended to those articles, and, by construction unon the usage, to the peril by which they were destroyed. And in tne case of Brough vs. Whitmore, respecting a vessel’s provisions burnt under similar circumstances, it was observed by the Court that the accident, both in that and the former case, was to be considered in the same light as if it had happened on board the ship itself. In the *385 present case no peculiar usage or necessity has been proved; but only that course of events common to all foreign voyages, where an outward cargo is sold, and a homeward cargo is purchased or intended to be purchased. No case has been cited to show that, in the progress * of the negotiations at the [ *429 ] foreign port, the goods landed from the vessel, or the goods prepared for the vessel, are understood, or have been taken, to be at the risk of the underwriters upon the vessel and her cargo, in the usual forms of marine insurance.
The claim for damage by the worms and climate is of course confined to so much as was suffered during the embargo ; for it is not pretended that, in the two months preceding the embargo, or while the vessel was detained in the employments of the voyage, the insurers are answerable. But by what means or proofs are damages of this kind to be apportioned ? The decision in the case of Rohl vs. Parr, cited for the defendants, affords, however, a direct answer to this demand. In that case, a vessel insured to the coast of Africa, there and back, had been wholly destroyed by the worms common to the rivers of hot climates, and a total loss was demanded upon the policy. But the decision was against the demand, and upon this ground, that the loss was like the wearing and natural decay of a vessel, and not by the perils of the sea. (a)
And respecting the third and fourth items of loss demanded in this case, for provisions expended, and for the possible earnings of the vessel prevented by the embargo, the general answer seems to be sufficient, that these losses are not covered by a policy upon the vessel, her appurtenances, and cargo. If, in conformity to the decision in Brough vs. Whitmore, provisions may be taken to be included in an insurance upon a vessel and her appurtenances, yet, by the same case, it is apparent that such insurance is understood to be against accidents by which the vessel’s provisions are destroyed, or taken specifically from their proper use, but not against an expenditure of them — even an extraordinary expenditure, as in the case of Robinson vs. Ewer, (9) when, like the decay of a vessel, they are to be estimated as deductions from her freight and earnings. And as to the estimate of possible earnings, it may be observed further that, even in an insurance upon freight, there is no loss within *386 the policy until the right to freight commences, according to the decision in the case of Tonge vs. Watts. (10) (a)
[ *430 ] * There can be no pretence for a return of premium in this case, and this demand has not been urged.
The opinion of the Court being against the plaintiffs’ demand in every particular, the judgment must be rendered against them as upon a nonsuit, according to the agreement of the parties in referring this case to the opinion of the Court.

Plaintiffs nonsuit.

 Page 162.

 Mackenzie vs. Shedden, 2 Camp. 431.

 The case of Rohl vs. Parr, 1 Esp. 445, was a decision by a jury at Nisi Prius. Lord Kenyon said, at the trial, that it appeared to him a question of fact rather than oi law. Park., (105,) Marshall, (493,) Chitty, (3 vol. 491,) Hughes, and other writers, (258,) cite this case, as maintaining the doctrine, that a loss by worms infesting the seas is not a loss by the perils of the seas. But see Depeyster vs. Col. Ins. Co. 9 Caines, 85. No other judicial opinions or decisions upon the point can be found.

 1 Term R. 127.

2 Stra. 1251.

a) Vide M’Bride vs. Mass. Ins. Co. 7 Johns. 431. -Penny vs. N. York Ins. Co 3 Caines, 155.