SAMUEL HAZARD'S ADMINISTRATOR, PLAINTIFF IN ERROR v.
THE NEW ENGLAND MARINE INSURANCE COMPANY.

558

560

564

The case was argued by Mr Selden, for the plaintiff in error; and by Mr Loring, with whom was Mr Webster, for the defendants.

Mr Selden, for the plaintiff in error,

566

Mr Loring, for the defendant.

568

574

578.

Mr Webster stated,

Mr Justice M'LEAN delivered the opinion of the Court.

The plaintiffs brought an action of assumpsit, in the circuit court from the district of Massachusetts, on a policy of insurance, dated the 29th of December 1827 ; whereby the defendants caused to be assured Josiah Bradlee & Co. for Thomas Hazard, Jun. of New York, fifteen thousand dollars on the ship Dawn and outfits, at and from New York to the Pacific ocean

and elsewhere, on a whaling voyage, during her stay and fishing, and until her return to New York, or port of discharge in the United States.

The declaration contained various counts, stating a total loss of the vessel, and a partial loss of the cargo ; and also a partial damage to the vessel by perils of the seas.

It appeared in evidence, that the vessel sailed the 29th of December 1827, and on her outward passage struck upon a rock at the Cape de Verd Islands, and knocked off a part of her false keel, but proceeded on her voyage and continued cruising, and encountered some heavy weather, until she was finally compelled to return to the Sandwich Islands, where she arrived in December 1829, in a leaky condition ; and upon an examination by competent surveyors, she was found to be so entirely perforated by worms in her keel, stem and stern post, and some of her planks, as to be wholly innavigable ; and being incapable of repair at that place, she was condemned and sold. The vessel had sustained an injury at the Cape de Verds, and she put into the port of St Salvador ; at both of which places the bottom of the ship was examined by swimmers.

On the trial, a bill of exceptions was taken by the plaintiff's counsel, to certain instructions of the court to the jury, and the case is brought before this court by writ of error.

The first instruction excepted to, is as follows. " The court further charged, that in ascertaining what is to be understood as a coppered ship, in applications for insurance on a voyage of this nature, the terms of the application are to be understood according to the ordinary sense and usage of those terms in the place where the insurance is asked for and made; unless the underwriter knows that a different sense and usage prevail in the place in which the ship is then lying, and in which the owner resides, and from which he writes asking for the insurance ; or unless the underwriter has some other knowledge, that the owner uses the words in a different sense and usage from those which prevail in the place where the insurance is asked for and made."

This instruction refers to the letter written by the plaintiff, at New York, on the 22d of September 1827, to his agent in Boston, requesting him to have the ship Dawn insured, and in which letter he made the following statement respecting the

ship. "This is the same ship that you had insured for me in Boston some years since. I will only observe, that I believe her to be one of the strongest and best ships in the whale fishery ; she has been newly coppered to light water mark, above which she is sheathed with leather to the wales, &c."

A representation to obtain an insurance, whether it be made in writing or by parol, is collateral to the policy ; and as it must always influence the judgment of the underwriters, in regard to the risk, it must be substantially correct. It differs from an express warranty, as that always makes a part of the policy, and must be strictly and literally performed.

The rule prescribed by the circuit court, to govern the jury in giving a construction to the representation in this case, was founded upon the fact, supposed, admitted or proved, that what "is to be understood as a coppered ship at New York, would not be so considered at Boston." And this presents the point for consideration, whether the plaintiff, in making the representation, was bound by the usage of Boston, or of New York where his letter was written and his ship was moored.

It is insisted, that Boston is the place where the contract was made, and where effect was given to the representation; and that, consequently, not only the contract, but the inducements which led to it, must be controlled by the usages of Boston.

This is an important question in the law of insurance, and it seems not to have been settled by any adjudication in this country ; and none has been cited from England. The plaintiff's counsel contends, that it is substantially a question of seaworthiness, and should be governed by the same rule ; and he refers to a decision in 4 Mason 439, as decisive of the point. In that case an insurance was made in Boston, upon a British vessel belonging to the port of Halifax in Nova Scotia, and the court says, " if the Boston standard of seaworthiness should essentially differ from that in Halifax, in respect to equipments for a South American voyage of this sort, it would be pressing the argument very far to assert, that the vessel must rise to the Boston standard before the policy could attach. Where a policy is underwritten upon a foreign vessel, belonging to a foreign country, the underwriter must be taken to have knowledge of the common usages of trade in such country, as to the equip-

ments of vessels of that class for the voyage on which she is destined. He must be presumed to underwrite, upon the ground that the vessel will be seaworthy in her equipments, according to the general custom of the port, or at least, of the country to which she belongs."

In every policy there is an implied warranty of seaworthiness, and this is a condition precedent on the part of the insured. The policy does not attach, unless the vessel be "properly manned and provided with all necessary stores, and in all respects fit for the intended voyage." The equipment of the vessel must depend upon the nature of the voyage; as a ship might be seaworthy for a voyage across the Atlantic, and not for a whaling voyage in the Pacific.

A representation might embrace all the facts of an implied warranty of seaworthiness; but this is wholly unnecessary, and is seldom, if ever done. The representation is designed to state the quality and condition of the ship, if that be the object of insurance, so as to induce the underwriters to insure on reasonable terms; and it is not limited to the facts necessary to constitute seaworthiness.

A question of seaworthiness is determined by the usages of the port where the vessel is fitted out, in reference to the destined voyage. But the facts stated in a representation may go beyond those usages; and the insured is bound to the extent of his communication, whether verbal or written. In the one case, the law implies a definite and fixed responsibility; in the other, the liability depends upon the express declarations of the insured.

If the representation in this case fall below the implied warranty of seaworthiness, it does not, in any degree, affect such warranty; it cannot, therefore, be considered as a substitute for the implied seaworthiness of the ship, but as a representation which entered into the consideration of the underwriters, when they fixed the premium of insurance.

The question then recurs, was the plaintiff bound, in describing the ship, to use the appropriate terms according to the usage in Boston or in New York? It is said, the terms used were calculated to mislead the underwriters, as they resided at Boston; and in insuring a "coppered ship," would of course refer to a vessel which could be so appropriately called at Boston.

The writer of the letter is a resident of the city of New York ; his letter was written at that place ; and he described his vessel then in the harbour of that city. What terms would he be supposed to use in giving this description ; those which are peculiar to New York, or those which are peculiar to Boston ? Can he be presumed to know the usages of Boston in this respect ; and must he not be presumed to know those of New York ?

In making a representation respecting his vessel, his mind would not be directed to Boston, but to his ship then in the harbour of New York ; and in describing her as a " coppered ship," he would refer to the appropriate designation at New York.

And would not the minds of the underwriters at Boston, seeing that the letter was written at New York, and represented a vessel in the harbour of that city, be very naturally directed to the sense in which the terms used were viewed in that place. Would they not inquire, whether the words " coppered ship" mean the same thing at New York as at Boston.

In a case of seaworthiness, such is admitted to be the rule ; and if the representation be not a warranty of seaworthiness, still does not the reason of the rule apply in the one case as forcibly as in the other.

The underwriters are presumed to know what constitutes seaworthiness in a foreign port, and to act under this knowledge; and why may they not, with equal propriety, be presumed to know, on a representation, the usage at the place where the vessel lies, and where she is described. It is but a presumed knowledge of usage in both cases ; and which, in both cases, must have the same effect on the rights of the parties. If, therefore, the rule be applicable to a case of seaworthiness, it must be equally so to a case of representation.

The underwriters are presumed to know the usages of foreign ports to which insured vessels are destined ; also the usages of trade, and the political condition of foreign nations. Men who engage in this business, are seldom ignorant of the risks they incur ; and it is their interest to make themselves acquainted with the usages of the different ports of their own country, and also those of foreign countries. This knowledge is essentially connected with their ordinary business ; and by

acting on the presumption that they possess it, no violence or injustice is done to their interests.

It would therefore seem to be reasonable to conclude that the defendants, when they made the insurance, were not misled by the representation of the plaintiff. That they must have considered the ship to be described according to the New York usage; such, at least, is the presumption which arises from the facts, and in strict analogy to other cases. The circuit court therefore erred in their instruction to the jury, that the representation was to be construed by the usage in Boston.

The second instruction of the court to which exception was taken is, "that although the terms of the letter applying for insurance were not to be considered a technical warranty, yet, if the coppering of the ship, as stated in the letter on which the insurance was made, was substantially untrue and incorrect in a point material to the risk, such a misrepresentation would discharge the underwriters, although the ship was partially coppered, and although the loss did not arise from any deficiency in the coppering."

Taking this instruction as disconnected with the first one, the principle asserted is undoubtedly correct. It is upon the representation that the underwriters are enabled to calculate the risk and fix the amount of the premium; and if any fact material to the risk be misrepresented, either through fraud, mistake or negligence, the policy is avoided. It is therefore immaterial in what way the loss may arise, where there has been such a misrepresentation as to make void the policy.

The fourth instruction excepted to will be next considered, as it embraces the principle asserted in the third. The judge charged, "that if the jury should find that in the Pacific ocean worms ordinarily assail and enter the bottom of vessels, then the loss of a vessel destroyed by worms would not be a loss within the policy."

This is an important question, and it seems now for the first time to be brought before this court.

In 1796 the case of Rhol v. Parr was tried, which involved this question, before Lord Kenyon, and a special jury, at nisi prius, reported in 1 Espinasse 445. His lordship said that "it appeared to him a question of fact rather than of law, such as the jury were competent to decide on, from the opinion on the

subject adopted by the underwriters and merchants." And " the jury found that it was not a loss within the term of ' perils of the sea' in policies of insurance, and of course that the plaintiff could not recover for a total loss."

There seems to have been a general acquiescence in this decision in England, as it has never been overruled.

In the case of Arnold Martin and others v. The Salem Marine Insurance Company, reported in 2 Mass. Rep. 420, the court expressly recognized the doctrine laid down in the case of Rhol v. Parr. But this doctrine is controverted in the case of Garrigues v. Coxe, 1 Binn. 596: and in Depeyster v. The Commercial Insurance Company, 2 Caines's Rep. 90, Mr Justice Livingston said that he did not " mean to be understood as subscribing to the nisi prius opinion of Lord Kenyon in the case of Rhol v. Parr ; that it was not necessary to decide in the case whether a loss by worms was within the policy.

It was well remarked by Lord Kenyon, that whether a destruction by worms be within the policy was a question of fact rather than of law, and could be best ascertained by a jury from the opinion of underwriters and merchants. This was a nisi prius decision; but it gave such general satisfaction to both merchants and underwriters and all others concerned, as never to have been questioned in England. It was the establishment of a usage by the opinions of those most competent to judge of its reasonableness and propriety ; and the approbation which has since been given to it in England by acquiescence, may well constitute it a rule in that country by which contracts of insurance are governed. And independent of the fact of its having been adopted by the supreme court of Massachusetts, is not the decision entitled to great consideration in this country ? It comes from the same source from which the principles of our commercial law are derived, and to some extent, the forms of our commercial contracts. Would it not be reasonable to suppose that these contracts are entered into with a knowledge of the rule by which they are construed in the most commercial country, if our own courts had adopted no rule on the subject ? But in the present case, the opinion of Lord Kenyon having been adopted in Massachusetts, the rule must certainly apply to all contracts made and to be executed in that state.

The court, in their instruction, did not lay down the rule broadly, that a destruction by worms was not within the policy but the jury were told, that if, " in the Pacific ocean, worm ordinarily assail and enter the bottoms of vessels, then the loss of a vessel destroyed by worms, would not be a loss within the policy." In other words, if the vessel was lost by an ordinary occurrence in the Pacific ocean, it was a loss against which the underwriters did not insure. In an enlarged sense, all losses which occur from maritime adventures, may be said to arise from the perils of the sea ; but the underwriters are not bound to this extent. They insure against losses from extraordinary occurrences only ; such as stress of weather, winds and waves, lightning, tempests, rocks, &c. These are understood to be the " perils of the sea" referred to in the policy, and not those ordinary perils which every vessel must encounter.

If worms ordinarily perforate every vessel which sails in a certain sea; is not a risk of injury from them, as common to every vessel which sails on that sea, as the ordinary wear and decay of a vessel on other seas? The progress of the injury may be far more rapid in the one case than in the other ; but do they not both arise from causes peculiar to the different seas ; and which affect, in the same way, all vessels that enter into them ? In one sea, the aggregation of marine substances which attach to the bottom of the vessel may possibly produce a loss ; in another, a loss may be more likely to occur through the agency of worms. Can either of these losses be said to have been produced by extraordinary occurrences? Does not the cause of the injury exist in each sea, though in different degrees : and against which it is as necessary to guard, as to prevent the submersion of a ship, by having its seams well closed.

In the form in which the instruction under consideration was given, this court think there is no error. If it be desirable to be insured against this active agent which infests southern seas, it may be specially named in the policy.

The third instruction objected to is : " that if there was no misrepresentation in regard to the ship, and she substantially corresponded with the representation, still, if the injury which occurred at the Cape de Verds were reparable, and could have been repaired there, or at St Salvador, or at any other port at

which the vessel stopped in the course of the voyage; the master was bound to have caused such repairs to be made, if they were material to prevent any loss. And if he omitted to make such repairs, because he did not deem them necessary; and if, by such neglect, alone, the subsequent loss of the ship by worms was occasioned, the underwriters are not liable for any such loss so occasioned."

If the loss by worms is not within the policy, as has already been considered under the fourth instruction; it must at once be seen, that the court did not err in giving this instruction. The negligence or vigilance of the master could be of no importance, under the circumstances, in regard to the liability of the underwriters.

The other instructions in the case, relate to the loss of the vessel by worms, and the representation made by the plaintiff; and as they do not raise any distinct point, which has not already been substantially considered, it is unnecessary to enter into a special examination of them.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Massachusetts, and was argued by counsel; on consideration whereof, it is the opinion of this court, that the said circuit court erred in instructing the jury, that in ascertaining what is to be understood as a coppered ship, in applications for insurance on a voyage of this nature, the terms of the application are to be understood according to the ordinary sense and usage of those terms, in the place where the insurance is asked for and made, unless the underwriter knows that a different sense and usage prevail in the place in which the ship is then lying, and in which the owner resides, and from which he writes, asking for the insurance; or, unless the underwriter has some other knowledge that the owner uses the words in a different sense and usage from those which prevail in the place where the insurance is asked for and made; but there is no error in the other instructions given by the said circuit court. Whereupon, it is ordered and adjudged, that the judgment of the said circuit

court be, and the same is hereby reversed for this error; and that in all other respects the said judgment be, and the same is hereby affirmed. And it is further ordered by this court, that this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo; and that further proceedings be had in said cause, according to right and jnstice, and in conformity to the opinion of this court.