UTAH HOME FIRE INSURANCE
COMPANY, Appellant,

v.

MECHANICAL EQUIPMENT COM-
PANY, Inc., Appellee.

No. 16277.

United States Court of Appeals
Fifth Circuit.

March 29, 1957.

Rehearing Denied May 3, 1957.

William S. Stone, Deutsch, Kerrigan & Stiles, New Orleans, La., for appellant. Brunswick G. Deutsch, Cornelius G. Van Dalen, New Orleans, La., of counsel.

Geo. B. Matthews, Selim B. Lemle, Lemle & Kelleher, New Orleans, La., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

This appeal is from a final decree in admiralty holding that appellee was entitled to recover the face amount of a policy of marine insurance on the Motor Vessel *Tuna Fish*.

The uncontroverted facts which give rise to the present controversy are these: On March 26, 1954, appellant, Utah Home Fire Insurance Company, issued to libellant, Richard M. Jones, owner of the *Tuna Fish*, its policy of hull insurance insuring the vessel in the amount of $12,000 against the adventures and perils of the bays, seas, rivers and other waters named. Following the issuance of the

policy and on April 15, 1954, appellant procured a condition survey of the insured vessel, and the surveyor found that the vessel had a present day market value of $12,000, a replacement value of $18,000, and approved the vessel for insurance purposes subject to certain stated requirements which libellant promptly met.

On the afternoon of May 4, 1954, and while being navigated down the middle of Bayou St. Joseph, in water ten to fifteen feet deep, the *Tuna Fish* struck some undetermined object a hard, sudden blow. The master who was at the wheel immediately slowed the engine to an idling speed and disengaged the clutch and although both he and the deckhand who was the other crew member looked astern, neither was able to determine the nature of the object the vessel had struck. Upon re-engaging the clutch and getting under way, the vessel immediately began to vibrate rather severely, but by reason of the fact that they were then only a short distance from their destination, the master proceeded at slow speed ahead to the rig in East Bay for which he was bound. Approximately twenty minutes thereafter and upon reaching the rig, libellant's maintenance man, Broussard, who was also master of the *Cat Fish*, another vessel owned by libellant, inspected the *Tuna Fish*, and determined that the propeller shaft or wheel was bent. He thereupon tightened the stuffing box to keep the shaft from turning, and being of opinion that damage would result if the engine was operated, he concluded that it would be advisable to have his vessel tow the *Tuna Fish* to Venice, the nearest port. On this trip, which was without incident and consumed five or six hours, the bilges of the *Tuna Fish* were checked by her master several times and only a normal amount of water was found. On arrival at Venice, libellant who was then in Houma, Louisiana, was notified by shore telephone that the vessel had bent her shaft or wheel, and that it would be necessary to dry dock the *Tuna Fish* to effect repairs. On the basis of this information he thereupon ordered the disabled vessel towed to his yard at Houma where he had a spare shaft and repairs could be effected at a cost of not more than $150.00. The libellant and the masters of both vessels believed that it would be entirely safe to tow the *Tuna Fish* to Houma, which was only about a day's run, and because the policy provided that no partial loss would be paid by the insurer unless it exceeded the sum of $250.00, libellant concluded that he did not have a claim under the policy and accordingly did not notify appellant of the damage which the vessel had sustained.

The following morning after checking the bilges of the *Tuna Fish* and finding only a normal amount of water Broussard again tightened the stuffing box to keep the shaft from turning as the vessel was being towed. At about 10:00 A.M., the *Tuna Fish* was made fast along side the *Cat Fish* and the flotilla proceeded up the Mississippi River bound for libellant's yard at Houma. About a half an hour after leaving Venice, several large deep sea ships passed the flotilla and wave wash from these vessels caused the *Tuna Fish* and the *Cat Fish* to pound together sharply. The master of the *Cat Fish* accordingly determined that it would be safer to drop the *Tuna Fish* astern on a towline to prevent further contact between the vessels and this was done. At this time, and subsequent thereto on three different occasions, the bilges of the *Tuna Fish* were checked and in each instance only a normal amount of water was found. When about four hours out from Venice and when the tow had reached a point in the river approximately a mile and a half above Empire, Louisiana, the *Tuna Fish* began to yaw and the master noticed that she was slightly down by the bow. The deckhand was promptly ordered aboard to check the bilges and he reported that water had risen several feet over the floorboards of the *Tuna Fish* rendering its motor-driven pump inoperative. The master of the *Cat Fish* then made an immediate attempt to beach the tow on the nearest or west bank of the river, but was prevented from doing

so by underwater stumps in that area. Being frustrated in this effort, the *Cat Fish* then towed the disabled vessel to the other side of the river and after several attempts was able to get the *Tuna Fish* on the ledge of the bank, at which time large swells from a passing ship caused it to slide off and part the mooring line and before the *Tuna Fish* could be secured again, she sank. From the time it was first noticed that the *Tuna Fish* was down by the bow to the time when she finally sank covered a period of three hours, during which efforts to save the vessel were constantly underway. Following the sinking and on the same day the insurer was notified of the loss and although salvage operations were thereafter conducted, the *Tuna Fish* was never found and must be considered a total loss.

Thereafter and following insurer's denial of liability for the loss, libellant brought suit in the District Court on the aforementioned policy to recover the value of the insured vessel, whereupon libellant assigned his claim against appellant to his mortgagee, Mechanical Equipment Co., Inc., and the latter thereupon intervened in the proceeding below. The case came on for trial and the court, sitting without a jury, found all of the material facts in favor of appellee and on the basis thereof concluded that libellant had complied with all of the terms and conditions of the policy, that the *Tuna Fish* sank and was lost as a result of a peril insured against therein, and that appellee, the intervening libellant, was entitled to recover the face amount of the policy. The court entered its final decree accordingly, and this appeal followed.

■ We take it to be the settled rule that in reviewing a judgment of a trial court, sitting without a jury in admiralty, this Court may not set aside the judgment below unless it is clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Therefore, the only question before us is whether the findings of the District Court are clearly erroneous. Appellant contends: (1) that the court's finding that the *Tuna Fish* struck a submerged object is without support in the evidence; (2) that the court erred in concluding that libellant complied with the terms of the policy for the reasons that prompt notice of the loss was not given in compliance with the notice clause of the policy and there was a breach of the warranty of seaworthiness and of the requirements in the policy that the vessel be manned by a sufficient crew and be kept well pumped; and (3) that libellant's fault proximately caused the loss. We do not at all agree. The questions thus raised are questions of fact, and a careful consideration of the record leaves us in no doubt as to the adequacy of the evidence to support the findings which were made by the court below.

■ With reference to appellant's first specification of error, we think the evidence convincingly supports the conclusion that the *Tuna Fish* did strike a submerged or floating object in Bayou St. Joseph. The evidence which the trial judge credited shows that the vessel sustained a hard, sudden blow and that immediately thereafter when again underway she began to vibrate because of the physical fact that her shaft or wheel was bent. Such an accident was undoubtedly a peril of the river within the policy and the trial court properly so held. New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir., 86 F.2d 53; New York & Porto Rico S. S. Co. v. Aetna Ins. Co., 2 Cir., 204 F. 255.

■ Coming now to appellant's second specification of error which involves the alleged policy breaches we have again for consideration only issues of fact which were resolved against appellant by the court below. Under the terms of the policy it was the duty of the insured to report any loss or misfortune promptly. This does not mean, however, that every trivial accident that occurred should be reported. An accident which an ordinarily prudent individual acting reasonably would consider, under all the circumstances, as inconsequential and which would not

**516**

afford the basis of any claim, the insured was not bound to report. Maryland Casualty Co. v. Sammons, 5 Cir., 99 F. 2d 323; Ohio Casualty Ins. Co. v. Rosaia, 9 Cir., 74 F.2d 522. And it was for the trial court to determine the purely fact question of whether or not the reasonably prudent person might have regarded the accident in question of such trivial nature as to require the giving of no notice. Phoenix Indemnity Co. v. Anderson's Groves, 5 Cir., 176 F.2d 246. Here, the evidence which we have detailed was sufficient to support a finding that the libellant and his employees were reasonable in concluding that there was no damage upon which a claim could be predicated, and that it would be perfectly safe to tow the *Tuna Fish* to Houma for repairs. This being the state of the record, it was not error to hold that there was no breach of the notice provision of the policy. Likewise, and with reference to the policy requirements that the vessel be manned by a sufficient crew, and be kept tight and well pumped out, we deem it sufficient to say that there was substantial evidence to support the trial court's conclusion that none of these requirements was breached. Consequently, we are disposed to give the District Court's findings the weight to which they are entitled under Admiralty Rule 46½, 28 U.S.C.A. McAllister v. United States, supra.

Equally without merit is appellant's third and last contention that the loss was occasioned by libellant's fault. In view of the uncontradicted testimony that during the five or six hour trip from the oil rig to Venice and even after lying in port overnight the bilges were found to contain only a normal amount of water, there was thus sufficient evidence to support a finding that libellant and those in charge of the *Tuna Fish* had reasonable grounds to believe that the vessel could with safety be towed to Houma, notwithstanding the damage which she had sustained. Adderly v. American Mut. Ins. Co., Fed.Cas.No. 75. Cf. Union Ins. Co. v. Smith, 124 U.S. 405, 428, 8 S.Ct. 534, 31 L.Ed. 497.

Affirmed.