WIGGINTON, Chief Judge.
Plaintiff has appealed from a summary final judgment entered in defendant’s favor. He urges for reversal the traditional ground that the court erred in finding from the pleadings, affidavits, answers to interrogatories and admissions on file in the cause that there was no genuine issue of a material fact eligible for jury consideration, and that defendant was entitled to judgment as a matter of law.
Plaintiff filed his complaint at law seeking recovery on a policy of marine insurance. It alleges that defendant issued to plaintiff a policy of insurance covering a vessel owned by plaintiff, a copy of which policy is attached to the complaint and made a part thereof by reference. It is alleged that while the policy was in force the vessel so insured partially sank causing extensive injury and damage to the hull, the engine and equipment, all of which was covered by the terms of the insurance policy sued upon. It is alleged that demand was made on defendant for payment of the damages insured against, which demand was refused. Judgment was prayed for the amount of damages allegedly suffered, together with costs and attorney’s fees.
To the complaint defendant filed an answer admitting in its first defense the issuance of the ipsurance policy, the partial sinking of the vessel and the resulting injury and damage therefrom. It alleged, however, that plaintiff had failed to furnish a proper proof of loss, and defendant’s liability, if any, was limited to the sum of $52.80 which was thereupon tendered into the registry of the court for plaintiff’s benefit. By its second defense it alleged that the damaged vessel was not covered by the policy in question because of a violation by plaintiff .of the warranty clause of the policy regarding seaworthiness.
Plaintiff answered certain interrogatories propounded by defendant and likewise answered a request for admissions of fact. Plaintiff’s answer to defendant’s request for admissions was in the form of two affidavits, one executed by plaintiff and another by the master of the damaged vessel who had commanded it for a period of one year prior to the incident out of which this cause of action arose.
From the answers to interrogatories and affidavits filed in response to defendant’s request for admissions the following facts appear. On August 23, 1956, the vessel was hauled and drydocked, the propeller and shaft were drawn; the shaft straightened and reconditioned and the propeller reshaped and overhauled. From the time the vessel was again placed in service until October 2, 1956, it performed properly and there was no vibration or other noticeable defects. On the date last mentioned the vessel embarked from Gulf Shores, Alabama, on a fishing trip with the mouth of the Mississippi River as its destination. Prior to embarkation the stuffing box at the opening in the hull through which the propeller shaft passes was inspected and found to be in good condition. A substantial portion of the voyage between the point of embarkation and the mouth of the Mississippi was in shoal waters. After the vessel was underway, the master noticed a slight vibration at the stern which he testified could have been caused by a variety of conditions such as the weight of the fuel, water and stores carried in the vessel, the presence or absence of a cargo, the depth or type of water in which it was navigating as well as weather conditions. Such vibration was not unusual and not sufficient to cause the master any concern. The master did not notice anything unusual in the performance of the vessel during the entire voyage from Gulf Shores to the place of destination which was reached on the night of October 6, 1956. Upon reaching its destination the vessel was anchored and the entire crew retired for the night. Upon arising about 4:20 a. m. on the following morning the master found that water had entered the hold of the vessel to a depth above the engine. After pumping out the vessel and checking the hold it was found *88 that the bolts securing the stuffing box to the propeller shaft had worked loose permitting water to enter through the hull into the hold of the vessel. The bolts were secured and the vessel towed to drydock. It was then found that the propeller shaft and rudder were badly bent. It was the master’s expert opinion as an experienced seaman that the damage to the propeller and shaft of the vessel was occasioned by striking some submerged object, although he admitted that he had no knowledge of where or when it might have occurred, or the type of object struck. The clear inference from the facts stated by the master is that the striking of a submerged object by the propeller and shaft caused the bolts securing the stuffing box to loosen which permitted seawater to enter through the shaft opening and stuffing box into the hold of the vessel.
By the recitals set forth in its summary final judgment the trial court found from the evidence before it that the damage suffered by plaintiff’s vessel was occasioned by the striking of some submerged object; that plaintiff’s right to recover under the policy depended upon proof that the damage alleged resulted from a peril of the seas; that the term “collision” is restricted to an impact of the insured vessel with other floating objects and that there is no “collision” within the meaning of that term where the insured vessel strikes upon some sunken obstruction in the water. The court concluded that the policy of insurance does not cover the accident which caused the damages suffered by plaintiff’s vessel, and upon such conclusion entered final judgment in defendant’s favor.
Appellant’s right to recovery depends upon a construction of the general insuring clause contained in the policy which reads as follows:
“Touching the Adventures and Perils which we, the said Underwriters, are contented to bear and take upon us, they are of the Seas, Men-of-War, Fire, Lightning, Earthquakes, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes, and Peoples of what nation, condition or quality soever, Barratry of the Masters and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the said vessel. * * * ”
Appellant strenuously asserts that the striking of a submerged object by the shaft and propeller of the vessel while at sea constitutes a “peril of the sea” within the meaning of the general insuring clause of the policy above quoted. It is noted that the policy covers, among other things, not only damages suffered as results of the peril of the sea, but also all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the vessel.
A peril of the sea has been defined as. “denoting ‘all marine casualties resulting from the violent action of the elements, as distinguished from their natural, silent influence, upon the fabric of the vessel;, casualties which may, and not consequences which must, occur.’ ”[1] It has been held that in an enlarged sense*“all losses which, occur from maritime adventures may be said to arise from the perils of the sea; but the underwriters are not bound to this extent. They insure against losses from extraordinary occurrences only; such as stress of weather, winds and waves, lightning, tempests, rocks, etc. These are understood to be the ‘perils of the sea’ referred to in the policy, and not those ordinary perils which every vessel must encounter.” [2] It has been further held that a policy insuring against losses arising from perils, of the sea covers a loss by stranding or col *89 lision, although arising from the negligence •of the master or crew, because the assurer assumes to indemnify the assured against losses by particular perils, and the assured does not warrant that his servants will use •due care to avoid them.[3]
As to whether the striking of a submerged ■object resulting in damages to the vessel constitutes a peril of the sea, a recognized authority on marine insurance says “It is beyond question that if a vessel strikes upon a sunken rock in fair weather and sinks, this is a loss by perils of the sea.” [4] Although the facts before the court in this case do not reveal whether plaintiff’s vessel struck a submerged rock or some other fixed or floating object, it would appear that the nature of the object stricken would be immaterial. It has been held that damages to the hull or propeller of a vessel occasioned by striking a submerged object come within the provisions of a policy insuring against damages resulting from perils of the sea, even in the absence of positive proof as to when the damage occurred, or the exact nature of the object struck.[5]
True it is that whether the damage suffered by plaintiff’s vessel was occasioned by striking some submerged object is established only by circumstantial evidence, the ultimate fact is one -.which a jury may reasonably infer from the evidence revealed by this record. Appellee contends that from all that appears in the record the damage might well have resulted from the vessel striking the bottom of the waterway through which it navigated on its voyage to the mouth of the Mississippi River. It reasons that if the latter fact be true, such an occurrence would not come within the definition of “perils of the sea”. For the reasons hereafter stated, we are not called upon to pass on the correctness of this proposition as a matter of law. Appellee advances the further thought that the loosening of the bolts securing the stuffing box through which seawater entered the hold of the vessel must have been caused by a vibration in the propeller shaft resulting from damage inflicted upon the propeller and shaft by striking some submerged object. It reasons that since a vibration was noticed by the master shortly after putting to sea on the voyage in question, it may be logically assumed that damage to the propeller and shaft occurred while the vessel was in port before embarkation. These are no doubt proper arguments for a jury’s consideration on the trial of-the cause, but lose their effectiveness when urged in support of a motion for summary judgment. The facts in evidence, and all reasonable inferences arising therefrom, must be indulged in favor of the party against whom a motion for summary judgment is asked. The converse is never true.
The trial court’s summary judgment is apparently predicated upon the assumption that the striking of a submerged object by the vessel’s propeller and shaft did not constitute a “collision” within the express terms of the insurance policy sued upon. From that premise the court reasoned, on the basis of settled principles of law applicable to marine insurance, that damages resulting from the “collision” in question are not covered by the policy for the reason that such term applies only to a collision between the insured vessel and some other floating object.[6] An examina *90 tion of the collision clause contained in the policy clearly reveals that it is a covenant whereby the insurer agrees to pay to the insured any damages for which the insured may become liable to a third party in the event the insured vessel, through its fault, collides with and causes damages to such other vessel. This clause has no relationship whatever to a claim by the insured for damages suffered by his own vessel as a result of striking an underwater object in circumstances constituting a peril of the sea. Furthermore, we find no provision in the policy limiting the insurer’s liability to “collisions” within the legally accepted meaning of that term. The basis for the trial court’s conclusion having been found to be predicated upon an erroneous premise, it follows that error was committed in holding that defendant was entitled to judgment as a matter of law. The summary judgment appealed is accordingly reversed and the cause remanded for further proceedings.
Reversed.
STURGIS and CARROLL, DONALD K., JJ., concur.

. The Warren Adams, 2 Cir., 1806, 74 F. 413, 415.

. Hazard’s Administrator v. New England Marine Insurance Co., 1834, 8 Pet. 557, 33 U.S. 557, 8 L.Ed. 1043.

. Liverpool & Great Western Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 9 S. Ct. 469, 32 L.Ed. 788; American-Hawaiian S.S. Co. v. Bennett & Goodall, 9 Cir., 1913, 207 F. 510.

. Arnould on Marine Insurance, 13th Ed., Vol. 2, p. 735.

. New York & Porto Rico S.S. Co. v. Aetna Ins. Co., 2 Cir., 1913, 204 F. 255; New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir., 1936, 86 F.2d 53; Utah Home Fire Ins. Co. v. Mechanical Eguipment Co., 5 Cir., 1957, 242 F.2d 513; Southport Fisheries v. Saskatchewan Gov. Ins. Office, D.C.E.D. N.C.1958, 161 F.Supp. 81.

. 43 A.L.K. 222; Baum v. Girard Fire & Marine Ins. Co., N.C.1948, 228 N.C. 525, 46 S.E.2d 324.