FRANK QUIÑONES JIMÉNEZ, Plaintiff and Appellee, *v.* GREAT AMERICAN INSURANCE COMPANY, Defendant and Appellant.

No. R-68-175.      Decided June 3, 1969.

*Rieckehoff, Calderón, Vargas & Arroyo* and *Antonio Montalvo Nazario* for appellant. *Rafael Martínez Álvarez, Jr., Rafael Martínez Alvarez, III,* and *José A. Fernández Paoli* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Rámírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Appellant, Great American Insurance Company, issued a policy, commonly known as marine hull policy,[1] in favor of appellee Frank Quiñones Jiménez, in relation to a vessel owned by the latter, to cover up to the amount of sixteen thousand dollars the risks which were described thus:

> *"Perils.* Touching the adventures and perils which this Company is contended to hear and take upon itself, they are of the seas and waters described herein, fire, lightning, earthquake, assailing thieves, vandalism, malicious mischief, jettisons, theft of the entire yacht, barratry of the Master and Mariners, *and of all other like perils,* losses and misfortunes, that have or shall come to the hurt, detriment or damage of said yacht or any part thereof; excepting however, such of the foregoing perils as may be excluded by provisions elsewhere in the policy or by endorsement."

> *"Latent Defect and Negligence.* This insurance also specially to cover loss of or damage to the subject matter insured directly caused by the following:

> "Accidents in loading, discharging or in taking on fuel, or in hauling, launching or in going on or off, or while on dry docks, graving docks, ways, gridirons or pontoons;

> "Collapse of buildings or other structures . . . ;

> "Negligence of Masters, Mariners, Engineers or Pilots;

> .    .    .    .    .    .    .    .

> "Provided such losses or damages have not resulted from want of the diligence by the Owners of the insured yacht or any of them, or by the Managers."

The insured vessel sank on the morning of July 24, 1965 in waters of the Atlantic Ocean, three or four miles from the coast of Dorado. A lawsuit was brought to collect the policy. In a pretrial hearing the parties submitted the case

---

[1] You may see *A Symposium on the Hull Policy,* 41 Tul. L. Rev. 231 (1967), for an interesting exposition of this sort of insurance.

with a stipulation of facts about the vessel's title and the existence of the insurance; and also that "at the time of issuing the policy . . . the yacht . . . was seaworthy" and "the causes which produced the sinking are unknown, but, however, in said sinking guilt or negligence on the part of plaintiff did not intervene."

■ The controversy boils down to the determination of whether, under the stipulated facts the insurance company, appellant herein, may be charged, without more, with liability, or whether it was incumbent upon the insured to establish that the sinking was due to one of the perils named in the policy, without relying on the ignorance of the cause and on the presumption which arises from the seaworthiness[2] of the vessel at the time of issuing the policy.

■ The most favored theory maintains that, in the absence of any circumstance—aside from the mere sinking— which shows a loss for causes outside the terms of the policy, the insured is only bound to prove that the vessel was seaworthy at the inception of the risk. That gives rise to the presumption that the loss was due to a "peril of the sea." In general see, Annotation, *Necessity under marine insurance policy of showing specific cause of sinking of vessel*, 31 A.L.R. 1378; 11 Couch, Cyclopedia of Insurance Law, § 43:96 (2d ed.); *Tropical Marine Prod.* v. *Birmingham Fire Ins. Co. of Pa.*, 247 F.2d 116 (5th Cir. 1957); *Brown* v. *Jerome*, 298 Fed. 1 (9th Cir. 1924); *Moores* v. *Louisville Underwriters*, 14 Fed. 226 (1882); *Mattson* v. *Connecticut Fire Ins. Co. of Hartford*, 80 F.Supp. 101 (1948); *Land* v. *Franklin Nat. Ins. Co. of New York*, 80 S.E.2d 420 (S.C. 1954); *Glens Falls Ins. Co.* v. *Long*, 77 S.E.2d 457 (Va.

---

[2] In general terms it is understood by "seaworthiness" that the vessel is as reasonably fit as practicable to encounter the perils or risks to be anticipated at sea. See *Compañía de Navegación* v. *Fireman's Fund Ins. Co.*, 277 U.S. 66, 75 (1928). See *Marine Insurance Policies: The Implied Warranty of Seaworthiness*, 30 I.C.J. 89 (1963); 41 Harv. L. Rev. 537 (1928).

1953) ; *Delanty* v. *Yang Tsze Ins. Ass'n*, 220 Pac. 754 (Wash. 1923) ; *Massey S.S. Co.* v. *Importers' & Exporters' Ins. Co.*, 189 N.W. 415 (Minn. 1922) ; *Paddock-Hawley Iron Co.* v. *Providence-Washington Ins. Co.*, 93 S.W. 358 (Mo. 1906). *Contra: Boston Ins. Co.* v. *Dehydrating Process Co.*, 204 F.2d 441 (1st Cir. 1953) ; *The Jungshoved*, 290 Fed. 733 (2d Cir. 1923) ; *Rousse* v. *Home Insurance Company*, 78 So.2d 522 (La. 1955) ; *Insurance Co.* v. *Tobin*, 32 Ohio St. 77 (1877). A recent modality of the rule is stated in *Commercial Union Assurance Company* v. *Foster*, 379 S.W.2d 320 (Texas 1964), in which it is said that the insurer has the burden of proving the defense of unseaworthiness.

*Pacific Dredging Company* v. *Hurley*, 397 P.2d 819 (Wash. 1964), upon which the insurer firmly relies, does not have the scope attributed to it, and rather supports the position of the insured. In limiting the effect of the presumption indicated it is stated that its application has the purpose of relieving the insured from the burden of proof as to the cause of the sinking "when the evidence thereof is simply impracticable or impossible to produce." But when it is established that the cause of the sinking is really unknown the presumption is applied in its entire extension. The opinion having been literally interpreted, what is required at most is to show that there is no available or accessible evidence about the cause of the sinking. Contrary to what was happening in the situation considered therein in which the identity of witnesses who could shed light on the causes of the sinking was known and who were not produced, in the instant case it was expressly stipulated that "the causes which produced the sinking are unknown." The cause being unknown, even under *Pacific*, it was proper to give efficacy to the presumption.

*Watson* v. *Providence Washington Ins. Co.*, 106 F.Supp. 244 (1952), introduces another element, the unexplained sinking of a vessel in *fair weather*. Even though we would

accept the doctrine outlined which in those conditions rejects the sufficiency of the evidence on the existence of seaworthiness, we could not apply it because no evidence about the conditions of the weather was produced. See also, *Hazard's Administrator* v. *The N.E. Marine Insurance Co.*, 8 L.Ed. 1043 (1834); *Jahn* v. *Steamship Folmina*, 212 U.S. 354 (1908); *Klein* v. *Globe & Rutgers Fire Ins. Co.*, 2 F.2d 137 (3d Cir. 1924); *Green* v. *Globe & Rutgers Fire Ins. Co.*, 192 N.Y.S. 770 (1922).

█ We have adopted, because we believe it more reasonable, the position of the majority. Thus, when a seaworthy vessel sinks, *and it is not possible to determine the cause*, it should be presumed that the shipwreck was due to a peril of the sea. The fact that after the sinking the specific cause of the sinking cannot be determined should not relieve the insurer from liability when the vessel was seaworthy and no negligence on the part of the insured intervened. The probabilities are that under such circumstances some peril of the sea has intervened. It is nothing more than a recognition of the force of the elements and of the inconsistency and commotion of the sea on the one hand, and of the fallibility of machinery and the finitude of the skill of man, on the other.

The judgment rendered by the Superior Court, San Juan Part, on May 15, 1968, will be affirmed.